W. S. MASON *vs.* ALFRED WILLIAMS.

1. One who has, and knows he has, title to property, who is present at a sale of it as the property of another, and who, when it is publicly announced before the bidding commences, that all persons claiming the same are requested to make known their claims, remains silent, is estopped afterwards from setting up his title against a purchaser for value at said sale.

2. One who accepts a deed for property, and claims and acts under it. knows all the facts constituting title, and intends to hold under it if he can, has such knowledge as the law intends by that term, and every reason applies why it should be disclosed which applies in the very rare case of absolute knowledge that the title is good.

3. There is a qualification of the rule to the extent that the true owner must mean for the purchaser to act upon his representations, but one comes within this qualification even, who, by his conduct, whether it be fraudulent and *malo animo* or simply negligent and omissive, gives to others reasonable ground to believe that he has no claim (for in this connection title and claim are synonymous) to the property, and such others do so believe and act on such belief.

4. Not only the *uberrima fides* but that simple *bona fides* which the law exacts from every man, required the true owner to made known his claim at said sale or never; he should have given all bidders the advantages he possessed from his exclusive knowledge: his omission to do so amounted to a negligence which imperilled the interests of others, and gave him an unfair advantage over them, enabling him, if he could, to buy low, and thereby secure an indisputable title, or, if another outbid him, to fall back on his reserved claim.

5. The registry of the plaintiff's title did not, *per se*, operate as notice to the purchaser.

PEARSON, C. J., and DICK, J., dissenting.

The cases of *Mason* v. *Williams* 8 Jones, 478, *Bank* v. *Fowle*, 4 Jones Eq., 8, and *Sanderson* v. *Ballance*, 2 Jones Eq., 322, cited and approved.

This was an action of trover under the old system, tried before His Honor Judge Barnes, December Term (Special) of Wake Superior Court, 1867.

W. S. MASON *v.* ALFRED WILLIAMS.

It was brought to recover damages for the conversion of a steam engine. It was admitted that the title to the engine was, prior to 24th of July, 1851, in the firm of James F. Jordan & Co.; that on that day W. D. Cooke, one of the firm, conveyed his interest therein to one Pescud as trustee, for sale, &c, and that on the 7th Nov. following J. F. Jordan another partner conveyed in trust his interest to one Jones. The firm consisted of other members besides Cooke and Jordan; the firm, however, by agreement retained possession of the engine till 1855, when, becoming insolvent, *they* conveyed it to one Benedict in *payment of a firm debt* who passed the title to the plaintiff as a trustee, for sale. The plaintiff thus became invested with the title, and it was so conceded on the trial, and that his title continued unless by some matters *in pais* hereafter stated.

It was in evidence on behalf of the defendant, that Pescud was informed of the existence of the engine and where it was to be found, and was told by plaintiff that in his (plaintiff's) opinion he (Pescud) had title and ought to sell, and that he (plaintiff) set up no claim to it, and proposed to buy it of Pescud; that thereafter, Pescud in the meantime having notified the defendant, who was interested in his trust, of his purpose, offered for sale such interest in the engine as he as trustee could sell; he called on the crowd and asked if any one present had any claim, to make it known, and that the plaintiff was present in hearing distance at the time and remained silent; that plaintiff bid for the interest so sold, and was next to the highest bidder who was the defendant. It was also in evidence that plaintiff in his conversation with Pescud acted with perfectly honest intentions, and was not aware of his title but really supposed that he had no title, and only became better informed after a decision upon the point by the Supreme Court made after the sale by Pescud.

There was conflicting evidence as to whether the plaintiff heard the proclamation but it is unnecessary to go into the

conflicting evidence on this and other points as the verdict of the jury settled that matter.

There was a demand and refusal before suit.

His Honor instructed the jury, among other matters not excepted to, that if the evidence satisfied them that the defendant was induced to purchase by the declarations or acts of the plaintiff, the latter was *estopped* from impeaching the transaction, or if the defendant purchased the engine in consequence of what the plaintiff told Pescud, or in consequence of the conduct of the plaintiff at the time of the sale, the plaintiff could not recover; that they must be satisfied that the acts or declarations of the plaintiff were the active, inducing cause of the purchase, and that in the absence of such inducement, the defendant would not have purchased.

To this charge the plaintiff excepted.

There was a verdict for the defendant, and after an unsuccessful effort for a *venire de novo*, and judgment rendered, on the verdict the plaintiff appealed.

*Phillips & Merrimon* for the appellee.

For the general principle relied upon, the plaintiff cites *Pickard* v. *Sears*, 33 C. L. 257; *Phillips* v. *Imthum*, 1 C. P. L. R. 463; *Cornish* v. *Abbington*, 4 Hurl. & Norm. 549; *Freeman* v. *Cook*, 2 Exc. 654; *Dazell* v. *Odell*, 3 Hill N. Y. 219, *Marfad* v. *Bliss*, 12 B. Mon. 255; *Mople* v. *Kussart*, 53 Pa. 348; *Welland Canal Co.* v. *Hathaway*, 8 Wind. 483; Adams Eq., 151; Smith's Man. Eq., 60; Story's Eq. Jur. sec. 387; Smith Lead. Cas., [1866] vol. 2, 742, &c.; *Bird* v. *Benton*, 2 Dev. 179; *Governor* v. *Freeman*, 4 Dev. 474; *Jones* v. *Sasser*, 1 D. & B. 462; *Sasser* v. *Jones*, 3 Ired. Eq. 19; *Lentz* v. *Chambers*, 5 Ired. 587; *West* v. *Tilghmau*, 9 Ired. 163; S. C. 8. Ired. Eq. 183; *Lamb* v. *Goodwin*, 10 Ired. 320, *Saunderson* v. *Ballance*, 2 Jones' Eq. 322; *Blackwood* v. *Jones*, 4 Jones' Eq. 54, and *Mason* v. *Williams*, 8 Jones' 478.

1. It is objected by plaintiff, that there can be no estoppel, as Pescud sold only *his interest*. *Pickard* v. *Sears*, *Lentz* v. *Chambers*, and *Sanderson* v. *Ballance* (*ubi supra*) are to the contrary.

2. It is said that the Court below erred in not calling the attention of the jury to the *intention* of the plaintiff. The reply is:

(*a.*) The Court was not asked to do so. *Torrence* v. *Graham*, 1 D. &. B., 284.

(*b.*) *Intention* is conclusively presumed from *acts*. *Rosc. Ev.*, 20, 505, *State* v. *Jesse*, 3 D. & B., at p. 108.

(*c.*) No denial that plaintiff *intended Pescud to sell*. Therefore he *intended somebody to buy*. That "*somebody*" turned out to be the defendant.

(*d.*) *Estoppel* does not require *intention* upon part of party estopped, but only an exercise of *will;* that his *mind is on* what he says; *advertence; Freeman* v. *Cooke*, and *Cornish* v. *Abington*, above.

3. As to plaintiff's *knowledge* of the state of his title:

(*a.*) He admits that he was *considering, weighing, doubting,* about his own title, during the time that he was suggesting the sale by Pescud, and saying nothing about his own claims.

(*b.*) *Ignorance* is no excuse where the party took an *active part*, as here, in bringing about the sale. *Smith Chan. Eq.*, 60, *Storey Eq. Jur.*, §387, *Smith's L. C.*, 2, 753 and 769, *Stows* v. *Barker*, 6 *John* Ch. p. 169.

4. The record shows that the defendant was not interested at all under Jones' trust; and only partially under Pescud's, and therefore that he has lost the greater part of what he paid if plaintiff be not estopped.

*Fowle* for appellant.

RODMAN, J. This case was before this Court at June Term 1862, on a case agreed, which will be found printed in full in

8 *Jones,* 478, so that it is thought unnecessary to copy it here.

*Battle, J.,* delivering the opinion of the Court undertakes to lay down what the Court then considered the true principle applicable to such a case in the following words : "Where a person purchases a chattel from another, not the owner, and it is admitted by the parties or found by the jury as a fact, that the purchaser was induced to make the purchase by the declarations or acts of the true owner, the latter will be estopped from impeaching the transaction." He proceeds: "If then, in the present case, it had been stated as an agreed *fact* that the defendant purchased the steam engine in question from Pescud, in consequence of what the plaintiff told Pescud, *or* in consequence of the conduct of the plaintiff at the time of the sale, we should say that the latter cannot recover. That fact, however, cannot be inferred by the Court, from anything stated in the case agreed, and it must be left as a question for the jury upon whatever competent and relevant testimony the parties may be able to produce on the trial."

Upon the new trial the facts stated in the case agreed were substantially given in the evidence and the parties themselves were examined on oath. Their evidence supplied a few additional details. And it may be well to note here, that the defendant said that he did not recollect that Pescud had ever told him that the plaintiff had said he made no claim to the property. No inference, therefore, can be drawn from any supposed communication of this sort, from Pescud to the defendant. His Honor, Barnes J., instructed the jury "that if the evidence satisfied them that the defendant was induced to make the purchase by the declarations or acts of the plaintiff, the latter was estopped from impeaching the transaction." The jury found for the defendant. The fact, therefore, which the Court had said was the only thing wanting to entitle the defendant to a judgment was thus established.

The case was extremely well argued before us on both sides, and we are indebted to the learned counsel for their assistance in coming to our conclusion.

The counsel for the plaintiff contends now that the rule announced by the Court in 1862, and consequently, the instructions of Judge Barnes, which followed it, were erroneous, inasmuch as it failed to include at least two of the ingredients necessary to raise an estoppel in the case supposed, and that as these two ingredients have neither been admitted nor found by a jury, the defendant is not entitled to a judgment.

The two facts which the plaintiff insists to be necessary to the completeness of the defense, and to be wanting, are :

*First,* That plaintiff should have had knowledge of his own title ; and,

*Second,* That he should have meant to induce the defendant to believe that he (the plaintiff) had no title ; and,

*Third,* He contends that if the defendant had equal knowledge of the plaintiff's title with himself, he could not be deceived or injured.

To all these propositions the defendant answers, that it does not appear that the points were made upon the trial, or that the Judge was requested to instruct the jury upon them, upon the doctrine that it is not error for a judge to omit to charge upon a point without being requested. It might be that the rule would not apply in a case like this where it is contended that the charge laid down a rule which was erroneous by reason of its omitting the necessary qualifications. So rather than rest our decision on a mere point of practice like that, we prefer to put it on the merits of the question. We concede the propositions of the plaintiff, provided they are properly understood, and we propose to state in what sense we think they are true. In their proper sense and meaning we think the existence of both facts must be inferred as matters of law from the facts stated in the case agreed.

1. *Knowledge by the plaintiff of his own title.*

In this case the title of the plaintiff existed by virtue of a deed of conveyance of the property to him, which he had personally accepted and under which he had acted. It is true

that the legal effect of that deed had not then been adjudicated by a court of final resort as was afterwards done, (*The Bank v. Fowle*, 4 Jones' Eq. 8,) and its effect was a matter of controversy. But to give to the principle the interpretation that no one can be said to have a knowledge of his title until it has stood the test of judicial enquiry, would be pushing it to an absurd extreme, which finds no support in any authority. Here the plaintiff knew every fact constituting his title that he has knowledge of to-day. He claimed under that title whether it should turn out good or bad in law, and intended to hold under it if he could. He knew of his *claim*, and in the case of such knowledge every reason applies why it should be disclosed under circumstance requiring its disclosure, which applies in the very rare case of an absolute knowledge that the title is good.

2. *That the plaintiff should have meant to induce the defendant to believe that he (the plaintiff) had no title.*

We think the true rule upon this subject is stated in *Freeman* v. *Cooke*, 2 Wels. Hurls and Gard, 653, (2 Ex. R). This has been referred to in several subsequent cases. *Howard* v. *Hudson*, 2 Ellis & Block, 175 E. (C. L. R.,), and always so far as we know with approval. We suppose that case to contain the settled expression of the English law. In that case Parke B, commenting on the case of *Pickard* v. *Seers*, where the language of the Court had been ; "where one by his words or conduct *wilfully* causes another to believe in the existence of a certain state of things, &c.," explains the meaning of the word "wilfully" in that connection as follows : "By the word "*wilfully*" however in that rule, we must understand, if, not that the party represents that to be true, which he knows to be untrue, at least, that he *means his representation to be acted on*, and that it is acted upon accordingly ; and if whatever a man's real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and did

act upon it as true, the party making the representation would be equally precluded from contesting its truth; and conduct by negligence or omission where there is a duty cast upon a person, by usage of trade or otherwise to disclose the truth, may often have the same effect."

In *Howard* v. *Hudson ubi supra*, Crompton J. says: " I think in every case in which we are to act upon, it must be brought within the principles so accurately laid down in the elaborate judgment in *Freeman* v. *Cooke*, &c." "As the rule is there explained, it takes in all the important commercial cases in which a representation is made, not wilfully in any bad sense of the word, not *malo animo*, or with the intent to defraud or deceive, but so far wilfully, that the party making the representation means it to be acted on in that way. That is the true criterion.

In *Cornish* v- *Abbingdon*, 4 Hurl & Nor. 549, (Exch. R.) one Gover who was in the employment of the defendant, but without authority to contract for him, did nevertheless contract with plaintiff for certain work and materials, and the plaintiff believing that he was dealing with defendant, made out invoices for him, which he several times paid. The one on which the action was brought he refused to pay. Pollock C. B. says : "The jury having found that the defendant, whether intentionally or not, led the plaintiff to form an opinion that he was dealing with the defendant, and induced him to furnish goods to the defendant, the defendant must pay him for them." "If a party uses language,'(or we add does acts) which in the ordinary course of business and the general sense in which words are understood (or we add, acts are interpreted) conveys a certain meaning, he cannot afterwards say he is not bound, if another so understanding, has acted upon it." And Barnwell B. says, "the rule is that if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things exists, and acts on that inference, he shall be afterwards estopped from denying it."

These cases we think clearly show what is the meaning of the rule, that the true owner must mean for the purchaser to act upon his representations.    It is only, that if by his conduct, whether that conduct be fraudulent and *malo animo* or simply negligent or omissive, he gives to others reasonable ground to believe that he has no claim, (for in this connection title and claim are synonymous) to the property, and such others do so believe, and act on such belief, he is estopped afterwards to assert such title or claim.    Indeed the rule is general and of familliar application in relation to responsibility generally, as well as civily, for the consequences of one's acts.    Every reasonable being is presumed *de jure* to intend the natural and reasonable consequences of his conduct.

Now how does this rule apply to the facts which we must suppose to have been found by the jury in this case?

It is conceded that the plaintff had no fraudulent intent, except that mere technical fraud which may be implied from his conduct.

I put out of view any inferences which may have been attempted to be drawn from his telling Pescud that he had no claim ; because the defendant swears that such conversation was never communicated to him.

I assume for the present that the defendant had no notice that the plaintiff had any claim to the property, because he swears he had not, and there is no evidence that he had.

The legal inference as to the meaning of the plaintiff must be made out entirely from his conduct at the sale.    It was contended by his counsel, that inasmuch as the plaintiff bid for the property, he could not have intended to induce the defendant to bid over him, and consequently there can be no inference that he meant to injure the plaintiff.    That is a misconception of the question, and of the defendant's intention.    The defendant does not allege that the plaintiff really intended to induce him to bid, but that the reasonable effect of the plaintiff's conduct was to induce him to believe that the plaintiff

had no claim to the property, and thereby to induce him to bid.

Having cleared the question of these irrelevant matters, I return to consider the plaintiff's conduct at the sale, and how far it falls within the rule of law before stated. Pescud offered his own right and that of Jones in the property, for sale, and called on all persons who had any any adverse claim to make it known. The plaintiff was in hearing and was silent, and afterwards bid for the property without making known his claim.

It seems to me that not only the *uberrima fides*, which his counsel claimed for him, but that simple *bona fides* which the law exacts from every man, required him to make known his claim then or never. The facts in this case are much stronger than in *Sanderson* v. *Ballance*, 2 Jones, Eq, 322, in which the Court held the defendant estopped to assert his title to land. There Thomas Ballance had conveyed by deed professing to convey in *fee simple* certain land to Carter in trust to sell to pay debts. Carter offered for sale the estate of Thomas Ballance. but said the title was good in fee. Thomas Ballance in fact owned but a fee in half the land and a life estate in the other half, in which the defendant owned the reversion. The defendant was present at the sale; he was not summoned to make his claim; he did not bid; he was only silent; and the Court held it a fraud by which he forfeited his estate. It is not necessary in this case to go to the extent to which the opinion of the Court went in that: and possibly it went too far. It is found as a fact here, that the defendant was induced to buy by the conduct of the plaintiff; the question is whether that conduct was not such as would reasonably induce the belief that the plaintiff had no claim to the property; or did the defendant draw an unreasonable and improbable inference from such conduct. It seems to me that when brought to this narrow point, the matter will not admit of discussion.

Should not the plaintiff have made known his claims and

given to all bidders the advantage he possessed from his exclusive knowledge of that? Was not his omission to do so a negligence which imperilled the interests of others, and gave him an unfair advantage over them? If he could buy low, his title would be indisputable; if another bid over him he could fall back on his reserved claim.

*Third : That defendant had equal knowledge with the plaintiff, and so could not have been deceived.*

· This has been already briefly adverted to. The defendant swears that he had no knowledge of plaintiff's claim, and there is no evidence that he had, unless the registration of the deed to plaintiff was constructive notice. *Saunderson v. Ballance* decides that it was not. In that case the deed from Caleb Ballance, which gave Thomas Ballance a life estate only, was registered, but Saunderson the purchaser was not held thereby to have notice of it.

The majority of the Court think there is no error in the record and that the judgment must be affirmed.

PEARSON, C. J., *dissentiente.* The question will suggest itself to evry plain man to whom the facts of this case are made known: what has Mason said or done that should cause him to forfeit a valuable property (the title to which has been decided by the Supreme Court to be in him) for the benefit of Williams, whereby Mason will be subjected to account for its value, as for a *devastavit* of trust funds?

The result of the case after it has been pending in the Courts for years and has been tried and argued over and over again may, in the opinion of many seem to furnish an illustration of the fact, that good sense is sometimes shut out and smothered by too much learning.

It is not pretended, that Pescud was authorized directly or indirectly to sell the title of Mason. On the contrary, Pescud announced that he only offered for sale his own title and that of Jones, under their respective deeds of trust, and would

make no warranty; so the ground that the title of Mason passed, by reason of a *personal agency*, on the part of Pescud for Mason, is out of the case so far as that can be made the basis of an equitable estoppel, according to the bearing of many of the cases cited, which are put upon the idea of a personal agency or assent.

The second ground for the equitable estoppel by which Mason is to forfeit his title, is that of actual or constructive fraud, actual fraud is not alleged. Williams was induced to bid, because Mason bid, such is the finding of the jury, for Williams had avowed his purpose not to let the property go, unless at a fair price; in other words, he intended as a *party interested under Pescud's title*, to bid it in, so when Mason bid $260, Williams was induced to bid $265. But this is not the good sense of the matter, and herein Mason has a right to complain that the case has not been put upon its merits. So there has been a failure of justice which entitles him to a *venire de novo*.

The question should have been presented to the jury in *this* point of view: was it the intention of Mason to *induce Williams to bid for the* property? Was Williams thereby misled to his prejudice? so as to fix upon Mason a constructive fraud, by having intentionally or admittably, (as Mr. Phillips expressed it,) induced Williams to do an act to his injury so as to make it against conscience for Mason after he became certified, that the title was in him, to set up claim to the property? I, of course, put out of the case the narrow view that Williams was *induced to bid*, because he did not intend to let Mason buy in Pescud's title, at what he considered an inadequate price.

1. Was it the intention of Mason to induce Williams to bid for the property? All of the evidence disproves this intention, so far from that being the case, it was Mason's purpose to buy in the title of Pescud in order to remove a cloud and quiet his own title, so, of course he did not wish Williams or any one else to bid; and but for a high sense of honor and fair

dealing, he would have attempted to prevent it, by answering that, "he also held a deed of trust on the property, but would bid a small sum to get in Pescud's supposed title, and whoever should bid against him must take the chances," instead of pursuing this disingeneous course to try and get Pescud's title at an under value, he bid, as far as he thought Pescud's title was worth, and left the field open for Williams and all others who might choose to bid. For this, Mason is now charged with constructive fraud. I will venture to say, there is not one man in ten, who would have acted as fairly. Nine men out of ten, would have talked about their deed, case still pending in the Supreme Court, willing to make a bid to end the dispute by buying in the outstanding title, &c.

2. *Was Williams misled* by what Mason said and did, to his prejudice? How was he misled by Mason, did he have any communication with Mason or confide in him? How was he misled by Mason? Pescud after talking to Mason consulted with his counsel and concluded to sell his title at auction, and communicated this fact to Williams. Williams being the party interested, determined to attend the sale and make the property bring a fair price or bid it in, thus far there is no semblance of *misleading*. Surely, the fact that Mason bid for the property after Pescud had announced that he sold only the title under the trust to him and Jones, had no tendency to *mislead* Williams. Williams has got what he bid for, to-wit: the title of Pescud and Jones—how can he now claim, under that bid, to have become entitled also to the title of Mason?

Justice Dick concurs in this opinion. Justice Boyden concurs in the principles set out, but feels bound by the verdict of the jury.

I feel it to be a duty, to file this opinion, in order to protest against a precedent, that no man can bid at a public auction with the purpose to quiet his title, without incurring a forfeiture of that title.

Per Curiam.                Judgment affirmed.