BANK OF CHARLOTTE *v.* R. F. and J. M. DAVIDSON.

A promissory note payable in Confederate currency in 1863, is a contract to pay *money*, and not a contract to deliver specific articles: *Hence*, a tender of the money at the day does not satisfy the debt, but only stops the interest.

In an action upon such note, where the money tendered had been refused: *It was held*, that although the defendant need not bring into Court the Confederate money, now worthless, he should have accompanied his plea by a payment into Court of the statutory equivalent for such Confederate money: *Held further*, that the plaintiff was entitled to interest from the date of the service of his summons.

(*Wooten* v. *Sherrard*, 68 N. C. Rep. 334; *Cable* v. *Harding*, 67 N. C. Rep. 172, cited and approved.)

CIVIL ACTION, (on a note given in 1863,) tried before his Honor, *Judge Moore*, at the July (Special) Term, 1873, of MECKLENBURG Superior Court.

Upon the verdict, the Court gave judgment for the scale value of the note at its date, with interest from the rendition of the judgment.   Plaintiff appealed.

The facts pertinent to the decision in this Court are fully stated in the opinion of Justice RODMAN.

*J. H. Wilson*, for appellant.

As to tender and refusal of payment in Confederate money, see *Terrill* v. *Walker*, 65 N. C. Rep. 91; same case, 66 N. C. Rep. 244.

A plea of tender is of no avail unless accompanied by a payment of money into Court of the amount admitted to be due.   *Jenkins* v. *Briggs*, 65 N. C. Rep. 159.

The Courts of this State have habitually treated notes payable in Confederate money as having all the attributes of promissory notes, and a tender of the like money in payment of same, which the payee refuses to receive, will not bar the debt.   *Wooten* v. *Sherrard*, 68 N. C. Rep. 334.   See Battle's Revisal, ch. 34.

BANK OF CHARLOTTE *v.* R. F. and J. M. DAVIDSON.

*Barringer* and *McCorkle & Bailey*, contra.

*Cable* v. *Hardin*, 67 N. C. Rep. 472, has this head note, and is exactly in point:

" Where a note was given in 1862 for a loan of Confederate money, and afterwards in 1864, the obligor tendered the amount due in Confederate currency, a portion of which was received and a new note given for remainder: *It was held*, that the old debt must be regarded as paid and the transaction a new loan and the scale applied as of that debt."

In the present case, the note was dated 26th of October, 1869, and was made due and payable sixty days after the 7th of November, 1863. The jury found, and the case shows, that this note was in renewal in part of two other notes then falling due, also payable in Confederate currency, one of $15,000, dated February 28th, 1863, and one of $10,000, dated May 23d, 1863—the residue of said two notes being then paid off.

The jury further found, and the case also states, that it was part of the contract that it was to be paid in Confederate currency, and " that the same was duly tendered at the maturing of the note."

The rule as to bringing the money into Court can have no application to a contract of this kind. That rule applies when a defendant admits a specific subsisting debt, payable in a currency recognized by the Court, and which the party also tenders to the Court. But in all Confederate contracts a public statute intervenes and applies new rules for ascertaining the value of such contracts, and makes them payable in another and a very different currency. The *dicta* in several late cases would seem to apply the old rule. But consider *Johnston* v. *Crawford*, Phill. 342 ; *Terrell* v. *Walker*, 65. N. C. Rep. 91.

RODMAN, J. On the 26th of October, 1863, the defendant was indebted to the plaintiff by one note for $15,000, dated and made 28th of February, 1863, and by another for $10,000, dated and made 29th of May, 1863. On said 26th of Octo-

ber, defendant paid all of the $15,000 note except $2,820.50, and all of the $10,000 note except $2,179.50, (the two sums remaining unpaid amounting to $5,000.)    In payment of this balance, the defendant gave the note sued on in this action, which was dated on said 26th of October, and payable at sixty days after 7th of November, 1863.

It was agreed at the time, that the note should be paid in Confederate currency, but this agreement was not inserted in the in the note, which was payable in dollars generally.    On the day of its maturity, the defendant tendered to the plaintiff the full amount of the note in Confederate currency, which the plaintiff refused to receive.    The summons in this action was issued on the 17th of December, 1868, returnable to Spring Term, 1869, of Mecklenburg Superior Court.    It does not appear on what day the summons was served.

On this case three questions are made:

I. What was the effect of the tender on the 7th of January, 1864?

2. At what date is the legislative  scale to be applied?

3. From what time does interest run  on the principle debt?

.1. We have recently said in **several** cases, that contracts such as that now before us, have been always regarded by the Legislature, and by this Court, as contracts to pay *money*, and not as contracts to deliver specific articles.    *Wooten* v *Sherrod*, 68 N. C. 334, and that consequently, the effect of a tender refused, is not to discharge the debt, but merely to stop the interest.    That this is the law of contracts to pay money ordinarily, is settled.    It is so laid down in all the text books, and must follow from the rule that a plea of tender must aver that the defendant has always been ready and willing to pay, and must be accompanied by a payment of the money into Court for the use of the plaintiff.    An omission to pay the money into Court makes the plea a nullity, and plaintiff may sign judgment.    *Bray* v. *Booth*, 1 Barnes 131; *Kether* v. *Shelton*, 1 Stra. 638.

There are two cases however, directly decisive of the question, as to deserve being quoted. *Dent* v. *Dunn, Ex'r.*, 3 *Camp*. 296, was an action on two notes. The defendant had given her agent a sum of money for the purpose of taking them up; the agent went to the plaintiff and offered to pay principal and interest on having the note delivered to him, but the plaintiff having mislaid the notes, could not deliver them. The agent afterwards failed with the money in his hands. The notes were not discovered until a short time before the commencement of the action. Lord ELLENBOROUGH said a tender could not extinguish the debt, but the interest ought to stop from the offer to pay.

In Dyer, there are several cases on the effect of a tender in debased money, but none of them appear to have been decided, except *Pong* v. *John de Lindsay*, 82 a. which is thus digested: " If at the time appointed for payment, a base money be current in lieu of sterling, tender at the time and place, of that base money is good, and the creditor can recover no other." Probably the base money was still current at the time of the trial. See also *anonymous case p*. 72. These old cases are referred to, rather as being curious, than as authorities.

In *Dixon* v. *Clark*, 5 Man. Gr. and Scott, C. B. 365. (57. E. C. L. R.) which was elaborately argued, WILDE, C. J., says: " In actions of debt and assumpsit, the principle of the plea of tender, in our apprehension, is, that the defendant has been always ready, *toujours prist*, to perform entirely the contract on which the action is founded; and that he did perform it, as far as he was able, by tendering the requisite money; the plaintiff himself precluding a complete performance by refusing to receive it. And, as in ordinary cases, the debt is not discharge by such tender and refusal, the plea must not only go on to allege that the defendant is still ready, *uncore prist*, but must be accompanied by a *profert in curiam* of the money tendered. If the defendant can maintain this plea, although he will not thereby bar the debt, (for that would be inconsistent with the *uncore prist* and *profert in curiam*, yet he will answer the action in the sense, that he will recover

judgment for his costs of defence against the plaintiff, in which respect the plea of tender is essentially different from that of payment of money into Court."

With respect to the averment of *toujours prist*, if the plaintiff can falsify it, he avoids the plea altogether." "Consequently, a plea by the acceptor of a bill or the maker of a note of a tender *post diem* is bad, notwithstanding the tender is of the amount of the bill or note, with interest from the day it became due up to the day of the tender, and notwithstanding the plea alleges, that the defendant was always ready to pay, not only f.om the time of the tender, as the plea was in *Hume* v. *Peploe*, 8 East, but also from the time when the bill or note became payable." For American cases, see *Raymond* v. *Bernard* 12 Johns, 274; 2 Pars. Bills and Notes 621; *Shields* v. *Lozear*, 34 N. J. Law, 5 Broom 496.

The answer to this question is governed by the decision in *Cable* v. *Hardin*, 67 N. C. 472. The scale must be applied at the date of the note. The former debts were discharged by the accord and satisfaction upon which the note sued on, was given. That such a transaction is a discharge and satisfaction of the old note see Am. Note to *Cumber* v. *Wane*, 1 Smith L. C. p. 458, citing *Sutton* v. *Albatross*, 2 Wall. and 10 Sergeant and Rawle 75, *Bank of U. S.* v. *Daniel*, 12 Peters 34, 4 J. J. Marshall, 1.

As there was a constant depreciation of Confederate currency, this rule may seem a hard one. But we must look to the intention of the parties at the time. There can be no doubt that the parties intended to discharge and destroy the old debt, and create a new one; and although they did not then foresee all the consequences, yet we must give to their contract its legitimate consequences; otherwise we should now be undertaking to make a contract for the parties which they they did not make.

3. This point has not before been presented to us. We think, however, that by the application of admitted principles, we can answer it equitably.

A tender after the day has no effect, because the defendant cannot sustain the averment in his plea, that he was always ready, and a plea which averred that he had always been ready since the tender would be had. *Turner* v. *Goodwin*, Stark 150 ; *Habdeny* v. *Tuke*, Willis 682 ; Say 18 ; *Dixon* v. *Clarke, ante.* For the same reason, if after the tender, the creditor demands payment, which is refused, the interest runs at least from the demand, *Spybey* v. *Hyde*, 1 Camp. 181, 5 B. and A. 630 ; *Coore* v. *Callaway*, 1 Esp. 115.

Ordinarily a plea of tender must, as we have seen, be accompanied by a payment into Court ; and hence in the case of an ordinary contract, to pay money, this question could never arise. We agree that as the Confederate currency had become entirely worthless before this action was brought, there was no reason why that should have been brought into Court along with the plea of tender. But the defendant could have accompanied his plea by a payment into Court of the statutory equivalent for the Confederate currency, to-wit, its value according to the scale ; and it was his duty to do so. If this action had been brought before the legislative adoption of the scale, it might have been different, as in that case the defendant could not have known with certainty the amount of his indebtedness, and the plaintiff's demand would have been in the nature of unliquidated damages, in which a plea of tender is impracticable. But in 1868, the sum due to the plaintiff might have been precisely known. We think plaintiff is entitled to interest from the service of the summons, or, as that is not stated, and it must be presumed to have been soon after the issue of the summons from the date of its issue.

The judgment below is partly affirmed, and partly reversed, and judgment will be entered in this Court in conformity with this opinion. Neither party will recover costs in this Court.

PER CURIAM.                                    Judgment accordingly.