DR. SHOOP FAMILY MEDICINE COMPANY v. J. R. DAVENPORT.

(Filed 15 October, 1913.)

1. **Contracts, Written—Parol Evidence—Implied Warranty—Principal and Agent.**

   While a written contract for the sale of goods may not be contradicted by an unauthorized parol agreement made with the sales agent by the purchaser, the law will imply a warranty that the goods are at least merchantable; and where a manufacturer of medicines brings suit upon a contract of this character for the sale of his products, the defense is available to the buyer, upon the implied warranty, that within the knowledge of the seller the medicines were worthless.

2. **Contracts — Vendor and Vendee — Goods Returned — Tender—Readiness to Pay—Payment into Court.**

   The manufacturer and seller of medicines brought suit upon a contract of sale of his products, which was resisted upon the ground that the medicines were worthless. The buyer returned a part of his purchase and sent his check for the balance, which he had sold. The seller returned the check, but not the medicines which had been sent to him. It having been ascertained by the jury that the medicines were worthless, it is *Held*, (1) that the plaintiff could not recover the value of the goods he had kept; (2) that upon the question of interest and costs, the defendant should have shown a continuous readiness to pay, or a payment into court, and merely offering the check on a foreign bank was insufficient. *Parker v. Beasley*, 116 N. C., 1, and *Bateman v. Hopkins*, 157 N. C., 470, cited and distinguished.

**3. Judgments—Tender—Costs and Interest—Interpretation of Statutes.**

> A tender of payment under our statute, to stop the costs and the accrual of interest on a judgment subsequently rendered, must be in writing, signed by the party making it, and contain an offer of judgment for the amount tendered. Revisal, sec. 860.

APPEAL by plaintiff from *O. H. Allen, J.,* at March Term, 1913, of PITT.

This is an action to recover the price of certain medicines alleged to have been sold and delivered to the defendant. The indebtedness is denied by him. It appears that plaintiff sold and shipped the goods to defendant, who sold some of them to different customers, amounting to $8.45, and finding that the medicines were worthless, he refunded the money to some of his customers who had bought from him, and returned the rest of the medicines by freight to plaintiff, with a bill of lading for same and a check for the $8.45. Plaintiff returned the check, but kept the goods and the bill of lading. There was evidence that the goods were worthless. Defendant offered to show that the agent, at the time of the sale, agreed that he could return the goods if they were not satisfactory, but this evidence was excluded by the court, as the contract was in writing, and it is stated therein that there is no other agreement, written or oral, than the one stated in the writing. Defendant tendered payment of the $8.45, which was refused, upon the ground that the tender should have been of the whole amount, which is justly due the plaintiff and claimed by him, but he did not allege or show continual readiness to pay, or a payment into court. Judgment for $8.45 and costs in justice's court, where tender was first made and refused, and appeal by defendant.

*Albion Dunn for plaintiff.*
*Harry Skinner and Lewis G. Cooper for defendant.*

WALKER, J., after stating the case: The court properly rejected the evidence as to the parol agreement of the plaintiff's agent. The contract could not be contradicted or varied in this way. *Medicine Co. v. Mizell,* 148 N. C., 384, and cases cited.

But defendant relies upon the principle that when the plaintiff sold the goods to him, it impliedly represented that they were fit for the use for which they were intended, or that they were merchantable, and that this representation turned out to be untrue, for they were not only not merchantable, but worthless, to the knowledge of the plaintiff. Mr. Benjamin states the rule on this subject, in substance, to be that in all sales by sample there is an implied warranty that the bulk shall be of equal quality to the sample. Where goods are sold without an opportunity for inspection, there is also an implied warranty that they shall be at least "merchantable"—not that they are of the first quality, or even of the second, but that they are not so inferior as to be unsalable among dealers in the article. This is especially true where, as in this case, the vendor is the manufacturer of the articles sold. Benjamin on Sales, 683, 686, and cases cited in notes. "If a man sell an article, he thereby warrants that it is merchantable; that is, that it is fit for some purpose. If he sells it for a particular purpose, he thereby warrants it to be fit for that purpose." *Jones v. Bright,* 5 Bing., 544. The principle was clearly expressed by *Lord Ellenborough* in *Gardiner v. Gray,* 4 Campbell, 143, where he denied the application of the rule as to sales by sample: "I am of opinion, however, that under such circumstances the purchaser has a right to expect a salable article answering the description in the contract. Without any particular warranty, this is an implied term in every such contract. Where there is no opportunity to inspect the commodity, the maxim of *caveat emptor* does not apply. He cannot without a warranty insist that it shall be of any particular quality or fineness, but the intention of both parties must be taken to be that it shall be salable in the market under the denomination mentioned in the contract between them. The purchaser cannot be supposed to buy goods to lay them on a dunghill. The question then is, whether the commodity purchased by the plaintiff be of such a quality as can be reasonably brought into the market to be sold as *waste silk*. The witnesses describe it as unfit for the purposes of waste silk, and of such a quality that it cannot be sold under that denomination." See, also, *Mc-*

*Clung v. Kelley,* 21 Iowa, 508; *Gaylord Manufacturing Co. v. Kelly,* 53 N. Y., 518. The principle, as stated, has been recognized and the above authorities approved in *Main v. Field,* 144 N. C., 307. See, also, *Manufacturing Co. v. Davis,* 147 N. C., 267; *Rogers v. Niles,* 11 Ohio St., 518; *Fitch v. Archibald,* 29 N. J. L., 160; *Murchie v. Cornell,* 155 Mass., 60; Tiffany on Sales, p. 260. Defendant, therefore, had the right to return the goods if they were unsalable and worthless. But it appears that the plaintiff received and kept that part of the goods reshipped to him by the defendant. There was ample evidence of this fact (35 Cyc., pp. 193 and 321), which the court fairly submitted to the jury, and they have found with the defendant. Surely it is not just that plaintiff should retain the goods and recover their value from the defendant. If he had refused to receive the goods or had returned them after discovering what they were, a different case might be presented, upon which, though, we express no opinion.

We do not think there was a sufficient tender of the $8.45 to stop interest and costs. To have this effect, the tender must be kept good, by being always ready to pay and by producing the money and paying it into court. *Bilzell v. Haywood,* 96 U. S., 580. In a recent case, *Justice Allen,* referring to this plea of tender and its sufficiency, says: "The plea of tender is defective in that, in addition to alleging that he tendered the amount due, the defendant fails to allege that he has at all times since the tender been ready, able, and willing to pay, and in failing to accompany the plea by payment of the money into court; and the evidence in support of the plea is equally defective." *Lee v. Manley,* 154 N. C., 247. And, again, quoting with approval *Dixon v. Clark,* 57 E. C. L., 376: "The principle of the plea of tender, in our apprehension, is that the defendant has been always ready (*toujours prist*) to perform entirely the contract on which the action is founded; and that he did perform it, as far as he was able, by tendering the requisite money, the plaintiff himself precluding a complete performance by refusing to receive it. And as, in ordinary cases, the debt is not discharged by such tender and refusal, the plea must not only go on to allege that the defendant is still ready

(*uncore prist*), but must be accompanied by a *profert in curiam* of the money tendered," citing, also, *Bank v. Davidson,* 70 N. C., 122. In *Soper v. Jones,* 56 Md., 503, it was held that "a plea of tender, not accompanied by *profert in curiam,* is bad." The same was said in *DeBruhl v. Hood,* 156 N. C., 52. This plea of tender applies peculiarly to actions of debt and assumpsit, the present action being assignable to the latter class, if we were proceeding under the former system of pleading. The tender does not pay or satisfy the demand. In this view it may be well to reproduce what this Court said (by *Rodman, J.*) in *Bank v. Davidson,* 70 N. C., 118 : "We have recently said in several cases that contracts such as that now before us have been always regarded by the Legislature, and by this Court, as contracts to pay *money,* and not as contracts to deliver specific articles (*Wooten v. Sherrard,* 68 N. C., 334), and that consequently the effect of a tender refused is not to discharge the debt, but merely to stop the interest. That this is the law of contracts to pay money ordinarily is settled. It is so laid down in all the text-books, and must follow from the rule that a plea of tender must aver that the defendant has always been ready and willing to pay, and must be accompanied by a payment of the money into court for the use of the plaintiff. An omission to pay the money into court makes the plea a nullity, and plaintiff may sign judgment. *Bray v. Booth,* 1 Barnes, 131; *Kether v. Shelton,* 1 Stra., 638." The rule is thus stated in 38 Cyc., 162, 169, 170: "Ordinarily a tender of money does not operate as a satisfaction of the debt, and is no bar to an action thereon; the effect, when the tender is maintained, being to discharge the debtor from a liability for interest subsequent to the tender, or damages that would accrue by reason of nonperformance, and costs afterwards incurred. . . . If the debt or duty is discharged by a tender, or the tender is relied upon as a defense to a foreclosure of a lien or the enforcement of some collateral right, it is sufficient, without more, to plead the tender and refusal, and in pleading a tender of chattels it is not necessary to plead a continuing readiness to pay. But where the debt or duty remains after a tender and refusal, it is not enough for the party who pleads a tender, in an action

to recover the debt, or damages for a failure to perform the duty, to plead the tender and refusal alone, but he must plead that ever since the tender he has at all times been and still is ready to pay the money or perform the duty; and where it is necessary to keep the tender good, the rule in equity in reference to pleading continued readiness to pay is no less strict than at law. Where the debt or duty is not discharged by a tender and refusal, or the tender is made the ground of the cause of action or defense, the tenderer must plead, in addition to a continuing readiness, a *profert in curiam,* that is, that the money has already been brought into court or is now brought into court ready to be paid." In our case it was not averred, nor does it appear, that defendant was ready with the money at the time of the alleged tender, or that he kept himself in readiness to pay, or actually paid it into court. The mere offering of the check was not sufficient, nothing else appearing. *Te Poel v. Shutt,* 57 Neb., 592; *In matter of Collyer,* 124 N. Y. App. Div. (Fisher), 16; *Poague v. Greenlee,* 63 Va. (22 Grattan), 724; *Larson v. Breene,* 12 Col., 480; 38 Cyc., 146. It was said in *Matter of Collyer, supra:* "His right to money was not affected by the fact that this check was once tendered in open court with a consent to an adjournment until it should be honored, and that he refused it. The check was not legal tender. It was but a direction to a bank to pay the payee; the money represented did not thereby become the property of the payee, nor was it put beyond the control of the maker of the check, nor did the check before presentation work an assignment of the moneys thereby ordered to be paid," citing *O'Connor v. Mechanics Bank,* 124 N. Y., 324. The bank on which the check was drawn was in a different State from that of the creditor's residence.

The case of *Smith v. B. and L. Association,* 119 N. C., 257, presents a different question, and is not like this case in its facts. Nor is *Parker v. Beasley,* 116 N. C., 1, in which the question was, whether the lien of a mortgage was released by a tender.

There seems to be a distinction between a tender for a simple, unsecured debt, and one made when the debt is secured by in-

dorsement or a lien, it being declared by some courts, contrary to what was held in *Parker v. Beasley, supra,* that a proper tender discharged the lien. But that question is not now before us. Nor is the principle which is sometimes applied by courts of equity applicable to this case. In *Bateman v. Hopkins,* 157 N. C., 470 (where the facts were peculiar), will be found a discussion of the law in regard to this difference. We there said: In general, the rules of equity concerning the necessity of an actual tender are not so stringent as those which prevail at law, as the decree can be so framed as to protect the parties, and more exact justice can be attained than under the technical rules of the law, which are of greater universality. There may be cases, even at law, or rather governed by strict legal principles, where the tender need not be renewed or kept good, as, for illustration, in *Blalock v. Clark,* 133 N. C., 306 (*s. c.,* 137 N. C., 140); *Hughes v. Knott,* 138 N. C., 105, it being useless to do so; but this rule depends for its application upon the exceptional facts of that class of cases, which may, though, embrace quite a variety of transactions.

Revisal, sec. 860, does not apply, as there was no offer of judgment, which must be in writing and signed by the party making it.

The other exceptions are untenable. The judgment will be modified so as to conform with this opinion in respect to the insufficiency of the tender, and in other respects is affirmed. Costs divided here.

Modified.