· BRANCH SAW COMPANY v. J. N. BRYANT.

(Filed 17 October, 1917.)

1. **Vendor and Purchaser—Contracts—Proposed Purchaser—Cancellation— Acquiescence—Burden of Proof.**

   The purchaser may not receive from the vendor goods he has agreed to purchase, and then return them to the vendor and cancel the contract without the latter's consent; and where the purchaser contends that he had made the vendor a proposition of this character, and that he had received and kept the goods, it is incumbent upon him to prove such facts.

2. **Same—Carriers of Freight—Principal and Agent—Personal Delivery— Evidence.**

   A contract of carriage by freight is not one of personal delivery to the consignee, and the fact that a purchaser of goods redelivered them to the carrier, under its ordinary bill of lading, properly addressed to the vendor, is not sufficient evidence of a redelivery to the vendor, upon the defense that the vendor had received the goods and kept them under the purchaser's proposition to cancel the contract of sale, the carrier in receiving the reshipment being regarded as the agent of the purchaser.

CIVIL ACTION, tried before *Bond, J.,* at February Term, 1917, of NEW HANOVER.

The plaintiff seeks to recover the sum of $144 for the alleged shipment of a certain lot of saws ordered by the defendant. The defendant avers that the saws were to be delivered in May, but were not delivered until July of the same year, and that, after inspecting the saws, he ascertained that they were not of the kind that he had purchased, or that the plaintiff had represented them to be. It was in evidence that, after receiving the saws, or after they had arrived at a place where he had the opportunity of inspection, the defendant wrote several letters to the plaintiff, in which he stated that, owing to his depressed financial condition, he could not pay for the saws, and requesting that the plaintiff have the Atlantic Coast Line Railroad Company, at Wilmington, N. C., return the saws to it, as he was in "bad shape." The defendant shipped the saws by rail to the plaintiff and advised it of the shipment by letter, but there was no evidence that the plaintiff received or accepted the saws, except the fact of the reshipment, and that the defendant notified the plaintiff by letter of what he had done. There was a verdict for the plaintiff, and judgment thereon, from which the defendant appealed.

*W. P. Mangum Turner for plaintiff.*
*McClammy & Burgwyn for defendant.*

WALKER, J., after stating the case: It is perfectly evident that the defendant having contracted to buy the saws, and the jury having found,

under the charge of the court, that they were of the kind and quality ordered by the defendant, the latter had no right to return them to the plaintiff without its consent, and it was not bound, therefore, to receive them, and could reject the proposal of the defendant that it take them back and cancel the contract. *Medicine Co. v. Davenport,* 163 N. C., 294. The evidence, instead of showing that the plaintiff consented that they might be returned to it, and the defendant discharged from liability under the contract, tends to show very strongly that the plaintiff refused to comply with the defendant's request, and it then devolved · upon the defendant to show, by affirmative evidence of some kind, that the saws were actually received by the plaintiff, and that it retained them. This, of course, would discharge the defendant, as the case above cited shows. The failure of the plaintiff to answer the defendant's letters, or his decision to ignore his offer of settlement, is evidence that the plaintiff was not content with his proposals, and actually refused to accept them. The delivery of the saws to the railroad company, properly addressed to the plaintiff, and the payment of the freight, do not constitute such evidence of a delivery to the plaintiff as is required in such cases, the carrier being the agent of the defendant to deliver the goods, and it being incumbent upon the defendant to show that his agent actually made the delivery, and that the plaintiff accepted the goods. It is stated in a text-book of high authority that in a case of land carriage it seems to have been thought by the early judges that personal delivery was implied in the contract, in the absence of stipulation or usage authorizing some other kind of delivery. This is still the presumption as to expressmen, express companies, and other carriers holding themselves out as having facilities for making personal delivery. Until reasonable effort to deliver in person has been made, an express company remains liable as carrier. If, however, by custom or regulation of the express company, limits are fixed beyond which it does not make personal delivery, when the character of such custom or regulation is known to the consignee, he must govern himself accordingly. The author then proceeds to say: "The rule requiring personal delivery does not apply to railroad companies, as they have no facilities for taking the goods to the residence or place of business of the consignee, and the general usage of their business does not require them to do so, and the same principle is applicable to special transportation companies." 6 Cyc., pp. 466, 467.

Treating of this matter in 4 Ruling Case Law, at sec. 276, pp. 821, 822, it is stated, with reference to express and railroad companies and carriers by water: "With respect to the carriers by water, however, the common law does not require an actual or manual delivery of the goods into the possession of the consignee, or at his warehouse, in order to dis-

charge the carrier from his liability as such. Vessels are necessarily confined to water; they only carry from port to port, or from wharf to wharf. Consequently, general custom, arising from necessity and the convenience of commerce, sanctions a discharge of their cargoes on the wharves or at public landings as a sufficient and proper delivery. When railways took the place of conveyances drawn by animals, as their routes are in a measure permanently fixed and not easily varied to suit the convenience or accommodation of the public, necessity seemed to require a relaxation of the rule of the common law requiring common carriers by land to deliver to the consignee personally; consequently, on the ground that a railway has no means of delivery beyond its own lines, universal custom seems to have settled it as being the most reasonable rule that railway companies may discharge themselves of their liability as common carriers by substituting in place of a formal personal delivery a delivery at the warehouse or depot provided by the companies for the storage of goods. Express companies, however, are, from the nature of their business, held to a very strict degree of responsibility, and must ordinarily make an actual personal delivery." In this State we have a regulation of the Commerce Commission regarding this matter which conforms substantially to the rule as above stated. It therefore follows that there can be no presumption, even *prima facie,* that the plaintiff received the goods, from the mere fact that they were delivered to the railroad company for transportation to it. If the plaintiff actually received the goods, it is very strange that the defendant did not show by evidence, which was certainly available to him, that his agent, the railroad company, actually made a personal delivery of them to the plaintiff. This fact, if it existed, could easily have been shown by the railroad's agent at the other end of the line, who knew of the delivery, if it was made.

We have examined the charge of the court very carefully, and find that every essential question of fact was submitted to the jury by the judge, and the verdict, when construed with reference to the evidence and instructions of the court, is equivalent to a finding that the plaintiff delivered the goods within a reasonable time after order for them was filed, and that the saws were of the kind and quality which were contracted to be sold to the defendant, and the jury further found that there has been no revocation of the contract.

We conclude that there was no error in the ruling of the court below.
No error.