J. B. DEBNAM v. J. A. WATKINS AND WIFE.

(Filed 8 October, 1919.)

1. **Mortgages—Tender—Payment Into Court.**

An unaccepted tender by the mortgagor of the amount due the mort-
gagee on the mortgage debt is insufficient, though properly made, unless
the tenderer shows his ability, readiness and willingness to pay the money
when tendered and brings it into court when he sues to redeem.

2. **Mortgages—Sales—Mortgagor a Bidder—Tender—Waiver—Estoppel.**

A mortgagor of lands, who attends the sale made under the power con-
tained in the mortgage, and, remaining silent, becomes a competitive
bidder, though he has a right to buy in the property in protection of his
title, is estopped *in pais* as against the purchaser to set up an unaccepted
tender theretofore made to the mortgagee after the maturity of the note
secured by the instrument; and his silence with knowledge of his right,
under such circumstances, will be construed as a waiver of the right
claimed, if any he may have had.

ACTION tried before *Allen, J.,* and a jury, at January Term, 1919, of
WAKE.

William Mitchell died in the year 1890 and left a will, in which he
devised the tract of land in question to C. R. Debnam for life, remainder
to his five children, Joseph B., Mattie, Bettie, Hattie and Thomas Deb-
nam. C. R. Debnam, the life-tenant, is still living, and about thirty
years ago he leased the land to the defendant, J. A. Watkins, who has
held it from year to year, under the lease, ever since. On 28 October,
1909, C. R. Debnam and Hattie Debnam, one of his children, conveyed
all their interest in the land, by deed of trust, to W. N. Jones, to secure
an indebtedness of $80, which deed was duly recorded in October, 1909.
On 16 December, 1910, C. R. Debnam and Thomas Debnam, one of his
children, conveyed all their interest in the land, by mortgage, to B. F.
Montague, to secure an indebtedness of $122.33, which mortgage was
duly recorded on 26 January, 1911. Thomas Debnam and C. R. Deb-
nam having failed to pay the indebtedness secured in the mortgage to
B. F. Montague, the latter, under the power of sale in said mortgage,
sold the land, and the defendant J. A. Watkins purchased the same at
the sale on 13 April, 1912, for $225, and a deed was duly made to him
by B. F. Montague and registered in April, 1912. Hattie Debnam and
C. R. Debnam having failed to pay the indebtedness secured in the deed
of trust to W. N. Jones, the latter sold the land, under the power of sale
in the deed of trust, and conveyed the same to plaintiff, J. B. Debnam,
for $260 by deed recorded on 13 July, 1913. The defendant having
failed to pay rent or to give possession to the plaintiff, he commenced
this action for possession and damages, as shown in his complaint.

The jury returned the following verdict:

1. Is the plaintiff the owner and entitled to the possession of the land described in the complaint? Answer: "Yes."

2. What is the yearly rental value of said land? Answer: "$100."

Judgment on the verdict, and defendant appealed.

*Jones & Bailey for plaintiff.*
*J. G. Mills for defendants.*

WALKER, J., after stating the facts as above: The questions of fraud and improvements may be eliminated from the case as the first is not properly pleaded, nor is the second referred to at all. It was agreed that the issues be settled after hearing the evidence. There was no evidence of fraud. It may be, as suggested by plaintiff on the argument, that defendants may proceed under the statute to have an allowance made for improvements, but we give no opinion as to this matter it not being before us.

Under the tender alleged to have been made to Mr. Jones, the senior mortgagee, the money has not been deposited in court, although the defendants seek in this action to redeem from the Jones deed of trust. It was said by *Justice Allen* in *Lee v. Manley,* 154 N. C., 244: "In *Dixon v. Clark,* 57 E. C. L., 376, *Wilde, C. J.,* announces the rule as follows: 'The principle of the plea of tender, in our apprehension, is that the defendant has been always ready (*toujours prist*) to perform entirely the contract on which the action is founded; and that he did perform it, as far as he was able, by tendering the requisite money, the plaintiff himself precluding a complete performance by refusing to receive it. And as, in ordinary cases, the debt is not discharged by such tender and refusal, the plea must not only go on to allege that the defendant is still ready (*uncore prist*), but must be accompanied by a *profert in curiam* of the money tendered'; and this is cited with approval in *Bank v. Davidson,* 70 N. C., 122. In *Bilzell v. Haywood,* 96 U. S., 580, it is said that 'To have the effect of stopping interest or costs, a tender must be kept good;' and in *Soper v. Jones,* 56 Md., 503: 'A plea of tender, not accompanied by *profert in curiam,* is bad.' In *Parker v. Beasley,* 116 N. C., 1, it is held that an unaccepted tender of the amount due on a debt secured by a mortgage does not discharge the lien of the mortgage unless the tender be kept good and the money be paid into court, and the same doctrine is affirmed in *Dickerson v. Simmons,* 141 N. C., 330." The alleged tender of defendants was made after the note was due. It is not necessary that our conclusion be based upon this ground alone, and that case is specially mentioned as appearing to be analogous in its facts, and it seems to be sufficiently so to control our decision.

There is another reason for affirming the judgment. If the tender of the amount due on the note secured by the deed of trust to Mr. Jones was properly made, or was a good tender, it appears that thereafter Mr. Jones, as trustee, offered the land for sale, after advertisement; that defendants attended the sale and bid for the land, without giving any notice to the other bidders that the sale was unauthorized because of a previous tender by him of the amount due upon the note secured by the deed of trust. He made no such claim at that time, and the plaintiff purchased at the sale, for full value and without any notice of any such claim on the part of the defendant. This, plaintiff contends, was a waiver of the tender defendants made, so far as he is concerned, and an estoppel upon the defendants to set it up as a defense in this action, even if, under other circumstances, it would be a valid one. This subject was considered to some extent in *Dickerson v. Simmons,* 141 N. C., 325, at 329, where it is said: "It is well settled and universally held that an unconditional tender on the day when the mortgage debt falls due, called the law day, discharges the lien of the mortgage, although the debt survives as a personal liability. 20 Am. & Eng. Enc. (2d Ed.), 1062, and cases cited; *Shields v. Lazear,* 34 N. J. Law, 496. As to the effect of a tender made, as in this case, after maturity, there is much conflict of authority. In those jurisdictions where the mortgage is treated simply as a security to a debt, the rule is that a mortgage is discharged by a proper tender made at any time before foreclosure, and that a sale under the power is void. In those more numerous jurisdictions where the common-law doctrines prevail, the lien of the mortgage is not discharged by the tender, the only effect being to arrest the accruing of interest and to free the debtor from future costs. If the mortgagor desires by his tender to discharge the lien, when it is not accepted, he must bring his suit for redemption and pay the money into court. North Carolina, Massachusetts, New Jersey, and other States are classified as jurisdictions which adhere to the common law. 20 Am. & Eng. Enc. (2d Ed.), 1063. In the first-named jurisdictions it is held that, where tender is made after the law day, a sale under the power is void even as to a *bona fide* purchaser for value. *Cameron v. Irwin,* 5 Hill (N. Y.), 272-6; Pingree on Mortgages, sec. 1342. The contrary is held in Massachusetts and some other courts, which adhere to the common law. Jones on Mortgages, 1798, and cases cited. Those courts regard the power as one coupled with an interest which cannot be revoked, and hold that a sale under the power, after an unaccepted tender, transfers the legal title to the purchaser, and that the tender is merely a foundation for a suit in equity for redemption. It seems, therefore, that in those States a *bona fide* purchaser for value and without notice of tender gets a good title. It is also held that a mortgagor who has notice of an

intended sale and allows it to proceed without objection cannot afterwards show a tender or even a payment in full of the mortgage debt and thereby defeat the title of a *bona fide* purchaser for value without notice. *Cranston v. Crane,* 97 Mass., 459; Jones on Mortgages, sec. 1788. It has been determined expressly by this Court that 'the unaccepted tender of the amount due on a debt secured by mortgage does not discharge the lien of the mortgage unless the tender be kept good and the money paid into court. Its only effect is to stop interest and cost accruing after tender,' " citing *Parker v. Beasley,* 116 N. C., 1. But our case is stronger for this plaintiff. The defendants knew of the sale and attended it with a view of becoming a purchaser, and was a competitor of the plaintiff in the bidding. He said nothing about his tender, did not rely upon it, and offered no objection to the sale. If he had any objection to it, based on the tender, common fairness required of him to then and there make it known and not to impress the plaintiff with the belief that no such objection existed, and thereby induce him to buy the land after being lulled into security by the defendants' silence and inaction, or by his conduct at the sale. In this connection, it is further said in *Dickerson v. Simmons,* at p. 330: "Notwithstanding the conflict between the courts as to the effect of a tender made after the law day, it seems to be agreed by all that a mortgagor may preserve his right to redeem against any purchaser by giving him notice of the tender before or at the sale," citing *Cranston v. Crane, supra;* Jones on Mortgages, *supra.* This the defendants did not do, but the opposite, as they not only assented to the sale but actually participated in the bidding. It would be very inequitable that they now should be allowed to set up their alleged tender, after they had held out to the plaintiff by their conduct that there was no such objection, or if it ever existed, that they waived it. Having been silent when they should have spoken, we will not hear them speak when they should be silent. They had undoubtedly a right to buy at the sale to protect their own title, but the obligation rested upon them not to put another to a disadvantage by their conduct, and cause him to do what otherwise he would not have done if the defendants' claim had been disclosed. Even in the assertion or protection of his own rights, a party should not by his acts or conduct mislead others, who will be prejudiced thereby, because of their ignorance of facts which were known to him and also because of his conduct, which induced them to act. The doctrine is well stated by the learned Reporter in the fourth headnote to *Mason v. Williams,* 66 N. C., 564: "Not only the *uberrima fides,* but that simple *bona fides* which the law exacts from every man, required the true owner to make known his claim at said sale or never; he should have given all bidders the advantage he possessed from his exclusive knowledge, and his omission to do so amounted to a negligence which

16—178

imperiled the interests of others, and gave him an unfair advantage over them, enabling him, if he could, to buy low, and thereby secure an indisputable title, or if another outbid him, to fall back on his reserved claim." There Mr. Mason attended the sale to protect his interest in the property, but he assented to the sale without making known his claim or his object in bidding, and he bid for the property, and by his silence induced another to buy. He was held to be estopped afterwards to assert his title against the purchaser. That case has been approved many times by this Court.

In *Morris v. Herndon,* 113 N. C., 236, at p. 239, *Shepherd, C. J.,* thus refers to the case: "The rule is that if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things existed, and acts on that inference, he shall be afterwards estopped from denying it," citing *Mason v. Williams, supra.* The passage was quoted from the opinion of *Bramwell, J.,* in *Cornish v. Abingdon,* 4 Hurl. & Nor. (Exch. Rep.), 549. He also quotes from 2 Herman on Estoppel, 9627, as follows: "But this is applicable only in the case where the foundation of the estoppel is in silence or acquiescence, for when the owner concurs in a sale by participating in it at the time, it becomes his own act." And in *Biggs v. Brickell,* 68 N. C., 239, *Justice Boyden* refers to the case in these words: "Can any one maintain that the debtor who assented to this sale could have successfully defended an action of ejectment brought against him by the defendant? We think *Lentz v. Chambers,* 27 N. C., 587, and *Mason v. Williams,* 66 N. C., 564, and the cases therein cited, are decisive of the question." See *Hardware Co. v. Lewis,* 173 N. C., 293. In this case it appears from the defendants' own testimony that they attended the sale, assented to it, and the male defendant was one of the bidders, that they gave no notice of their tender to the plaintiff or any other bidder. There seems to be no controversy about the facts, and the case falls within the principles of tender, payment of money into court, and estoppel, which we have stated as being settled by the authorities cited.

We have assumed in the discussion that the tender itself, as alleged by the defendants, was sufficiently made, that is, was in due form, though there is reason to doubt it.

No error.