BURWELL EAST and wife URSULA *v.* SAMUEL DOLIHITE.

Where A, without consideration, promised to devise a tract of land to B, and on the faith of that promise, B conveyed a tract of land to C; and afterwards A conveyed the tract she promised to devise to B to C; *Held*, that the promise of A to devise to B was not a contract by A which a Court would specifically enforce, or by force of which a Court would hold her a trustee of her land subject to her life estate, for the benefit of B; and that it did not destroy her power freely to devise or otherwise convey her land; nor did it estop C from accepting the conveyance from her.

A person may make a binding contract to devise his lands in a particular way, and a Court of Equity, in a proper case, will enforce in effect a specific performance of the contract. And also an owner of land may convert himself into a trustee for some other person without writing by an estoppel *in pais*.

The damage to support an estoppel, and convert the owner into a trustee, must be something more substantial than what would technically amount to a consideration in a contract. It must be a substantial one, and of such character that the person sustaining it cannot be put back in his former condition, and cannot be adequately compensated by pecuniary damages.

(*Sanderson* v. *Ballance*, 2 Jones Eq. 322; *Mason* v. *Williams*, 66 N. C. Rep. 564, cited and approved.)

CIVIL ACTION, tried before his Honor, *Cloud, J.,* at Spring Term, 1874, of STOKES Superior Court.

Upon the trial below, the jury having responded to certain issues submitted to them, his Honor gave judgment for the defendant. From this judgment plaintiffs appealed.

All the facts necessary to an understanding of the points decided, are stated in the opinion of the Court.

*Dillard & Gilmer* and *Shipp & Bailey*, for appellants.
*Scales & Scales* and *Graves*, contra.

Rodman, J.   From the record, the facts appear substantially these.  In 1863 William Dolihite died intestate, possessed of personal property worth about $300, and seized in fee of 238 acres of land.   He left a widow, Elizabeth, and five children, viz: Samuel, (the defendant) Tyree, Mary, Harden, and Ursula, (the *feme* plaintiff.)   One Carson became his administrator, and the widow and Ursula Riddle were his sureties. He received the personal assets and absconded, leaving his sureties liable.   Some short time afterwards an arrangement, which was never put in writing, was entered into between the widow and children to the following effect :

1. Samuel was to release his interest in his father's estate, and to receive the land of Ursula Riddle at her death, by devise from her.   She was an old, unmarried lady, the aunt of the children.

2. Tyree was in like manner to release and to receive the land of Mary Riddle, who was a sister of Ursula, and similarly situated.

3. Harden was to receive from his mother fifty acres of land which she held in her own right, and the four other children were each to pay him $25.

4. Mary was to receive one-half of her father's 238 acres.

5. Ursula, the plaintiff, was to receive the other half.

6. It was also agreed that the sureties to the administration bond should not be disturbed.

It does not appear that Ursula and Mary Riddle were par-

ties to this arrangement, further than that it was known to them, and they executed wills acccording to it

This arrangement was so far carried into effect that Harden received a deed for his mother's land, and the $100 agreed on. A deed to Ursula East, the plaintiff, for one half of her father's 238 acres, was executed by all the other children except Samuel, and she took possession. It does not appear why Samuel failed to join in the deed. Mary received a deed for and took possession of the other half of that land. Samuel and Mary Riddle rented the lands of Ursula and Mary Riddle respectively, and went to live on them as tenants.

Some time after this arrangement was made, and partly performed, Ursula Riddle changed her mind; she destroyed the will she had made in favor of Samuel, and made one in favor of the plaintiff Ursula. Samuel in his answer says this change was procured through the fraud of the plaintiff; but there is no evidence to that effect.

Upon this change the plaintiff became tenant of Ursula Riddle, and Samuel took possession of the half of his father's land, which had before been conveyed to the plaintiff, and all the other children conveyed their estates in that land to him. After this, Ursula Riddle signed a deed for her land to the plaintiffs, which she showed to plaintiff, but never delivered to her.

This state of affairs lasted for several years, when Ursula Riddle again changed her mind, and conveyed her land, by deed, to the defendant Samuel. The plaintiff charges that this change of purpose was induced by the fraud of the defendant; but there is no evidence to that effect.

Upon this state of facts, the plaintiff contends that Ursula Riddle became a trustee of her lands for the plaintiff, subject to a life estate in said Ursula, and that the defendant Samuel was equitably estopped from accepting a conveyance, and prays that he be declared a trustee for her.

It would not be to the advantage of the plaintiff to contend that the original arrangement was irrevocably binding on the

parties, or on them and Ursula Riddle; for that gave the land in controversy to Samuel. But we cannot see any circumstance in what the plaintiff calls the second arrangement, to distinguish it in this respect, favorably for the plaintiff from the first. If, by the law of North Carolina, part performance can in any case take an oral contract for the conveyance of lands, out of the statute of frauds, it would seem that, as between the children, who were the parties to the first arrangement, it should do so in that case. That question is not presented, and it is unnecessary to express any opinion on it.

If we put that arrangement out of view as a binding one, we are of the opinion that the second arrangement did not amount to a contract by Ursula Riddle, which a Court would specifically enforce; or by force of which a Court would hold her a trustee of her land, subject to her life estate, for the benefit of the plaintiff; and that it did not destroy her power freely to devise or otherwise convey her land; and that it did not estop the defendant from accepting a conveyance from her.

First, as to Ursula Riddle:

She promised the plaintiff to devise her land to the plaintiff, and the plaintiff on the faith of that promise, rented the land of Ursula, and also conveyed her interest in one half of her father's land to Samuel. There was no consideration for the promise of Ursula in any advantage to her. The plaintiff paid her rent: but that was only as a compensation for the use of her land.

Neither was there any consideration for the promise in the form of a disadvantage to the plaintiff, by reason of her conveyance to Samuel: for that was intended, and would be held to be on a condition to be void, if Ursula Riddle failed to devise to the plaintiff as she had promised to do.

The first arrangement was evidently conditioned on the event that the two aunts, Ursula and Mary, should devise as they were expected to do, and the second arrangement (if it can properly be called an arrangement,) was conditioned on the will

of Ursula, and on the failure of that condition the plaintiff was remitted to her prior right.

It is suggested that the plaintiff acted to her prejudice in yielding the occupation of her land for so many years to Samuel, who may have allowed them to become wasted by neglect or bad husbandry. Although this does not appear as a fact, yet it may have been so, and it may be supposed that to *some* extent the plaintiff was or might have been damaged, by acting on the promises of Ursula.

Under the circumstances what was the effect of the promise of Ursula to devise to the plaintiffs ?

No doubt a person may make a binding contract to devise his lands in a particular way, and a Court of Equity in a *proper case* will enforce in effect a specific performance of the contract. 1 Story Eq. Jur., secs. 781, 785, 786, 793 ; *Semmes* v. *Worthingham,* 38 Md. 298; *Moorhouse* v. *Colvin,* 9 E. L. E. E. R., 136 ; *Berkley* v. *Newland,* 2 P. Williams, 108, 608.

In England and in those States in which the doctrine of part performance is admitted, such contracts will be enforced, even when not written, when the enforcement is necessary to prevent a fraud.

It is said that in this State we have got rid of that doctrine. Under the statute of frauds, no contract for the conveyance of any interest in land is valid if not in writing, and it is said that in this State we admit of no exception.

Nevertheless it is held, that an owner of land may convert himself into a trustee for some other person, without writing, by an estoppel *in pais,* as in *Sanderson* v. *Ballance,* 2 Jones, Eq. 322.

The plaintiff does not seek a specific performance, or to convert Ursula Riddle into a trustee on the ground that the contract, though oral, has been in part performed. She puts her case on this proposition ; that by the promises of Ursula Riddle to devise to her, she was induced so to act, that in the event of the nonperformance of the promise she would be injured. She contends that her case comes within the principle of *Sander-*

son v. *Ballance*, above cited, *Mason* v. *Williams*, 66 N. C. Rep. 564, and of other cases to the same effect.

As an objection to this, we lay no stress on the absence of proof that the plaintiff was damaged by her reliance on the promise. A change of residence may of itself imply *some* damage. But the damage to support an estoppel against the owner of an estate, and convert him into a trustee, must be something more substantial than what would technically amount to a consideration in a contract.

It must be a substantial one, and of such a character that the person sustaining it, cannot be put back in his former condition and cannot be adequately compensated by pecuniary damages. The strongest objection, however, to the view of the plaintiff, arises out of the nature of the promise.

I will not venture to say that a promise to be performed in the future, can in no case, and under no circumstances, be the foundation of an estoppel. But certainly, in general the foundation of such estoppels as we are considering, is the fraudulent misrepresentation or concealment of a fact.

They are founded on the fraud, actual or in contemplation of law, of the party who is held bound. But in this case there was no fraud on the part of Ursula Riddle. It cannot be said that the failure to perform a promise is necessarily a fraud. Still less can that be said of a promise to make a will in a certain way. Such a promise, (except under special circumstances, which, as has been seen, would require a court to enforce its specific performance), carries with it, as a will itself does, the idea and condition of revocability. It expresses a present intent, and is understood to be contingent on the continuance the intent. I conceive there is no case where such a promise has been considered as the foundation of an estoppel.

There are in our books of Reports several cases of actions brought to recover for services rendered to a person since deceased, upon the faith of expectations held out, or promises made by him, to compensate the plaintiff by his will, which he failed to do. In such cases it has been held, that the plaintiff

could not recover, because the circumstances negatived an im-
plied promise to pay. But the idea is not any where sug-
gested, that an estoppel *in pais* had been created under which
they could claim as *cestui que trust* of the estate. The doc-
trine contended for would be dangerous. It would practically
convert mere words, without writing, without witnesses chosen
to attest, or any solemnity, such as the law prescribes for wills,
into an irrevocable will in the shape of a trust.

*Second.* Was the defendant Samuel estopped to accept the
land?

He has the legal title, and we can see nothing in the case to
make it against Equity and good conscience for him to keep it.

He says in his answer that he "quietly submitted" to the
change in the will of Ursula Riddle, by which the plaintiff was
substituted for him as devisee, and this with the fact, that after
that change he took a deed for the half of his father's land
which had previously been conveyed to the plaintiff, and pos-
sessed it for several years, is urged as creating an estoppel
against him.

It cannot be seriously contended that because a person named
as legatee in the will of living person "quietly submits" to a
change in the will made by the living testator, and act as if he
had abandoned all expectations under the will, he becomes
estopped from ever accepting a legacy from the testator, in
case he should again alter his will and give him one.

As the deed to the defendant for the Dolihite land, was evi-
dently intended to be conditional upon the event that Ursula
Riddle conveyed to the plaintiff, the defendant is a trustee of
that land for the plaintiff, and must convey to her as in his an-
swer he offers to do.

PER CURIAM.                    Judgment below affirmed.