JAMES NORWOOD *v.* SAMUEL CRAWFORD.

*Boundaries—Establishing Lines—Survey—Control by Monuments—Duties of Surveyor in Proceedings Under ch. 22, Acts of 1893.*

1. The natural order of survey being that which a deed shows the parties thereto adopted to identify, to their own satisfaction, the land intended to be conveyed, the true rule in a subsequent survey to establish boundaries is to run with the calls in regular order from a known beginning, following course and distance, and the method of ascertaining a previous line in the order of description by reversing cannot be resorted to unless by that method a greater certainty of identification of such prior line can be obtained than the deed itself gives in its description of that line.

2. Where, in a description in a deed, the point of beginning and the three last corners were monuments, and, in running in regular order by courses and distances the several lines between the point of beginning and the second monument, the line from the corner next preceding such monument to such monument passed outside the monument, the true rule was to run such line to the monument, disregarding course and distance, and not to survey the lines from the point of beginning in reverse order.

3. Under Acts 1893, ch. 22 ("An act to enable owners of land to establish the boundary lines thereof"), the surveyor appointed by the Clerk is not a referee, and his report should not contain conclusions of law. (Duties of surveyor under the act discussed by AVERY, J.).

SPECIAL PROCEEDING for the establishment of boundary lines under ch. 22, Acts of 1893, heard before *Brown, J.*, at Fall Term, 1893, of ORANGE Superior Court.

33

The surveyor appointed by the Clerk of the Court, after the filing of the petition and answer, made his survey and reported as follows:

"The above represents the Norwood and Crawford survey of lands situate in Orange county, North Carolina, near Hillsboro.

"Direct survey of the Norwood tract: Lots Nos. 3 and 4, beginning at poplar on pond, thence south thirteen degrees west four chains and seventy-eight links, and up branch as indicated by black lines, ending at E, one chain and fifty links beyond stone; thence dropping back to stone and running north nine chains eighty-two links to rock; thence south eighty and one-half degrees east one chain and sixty links to the beginning, containing per estimate twelve acres.

"Reverse survey of lot No. 3, beginning at poplar on pond,

thence with red lines north eighty and one-half degrees west one chain and sixty links to rock; thence south forty-four and one-half degrees west sixteen and seventy-seven one hundredths chains, passing stones fifty-five links; thence from stones holding all the distances with exact reverse calls, running with red line ending at point B in the pond, in connection with lot No. 4, containing fourteen acres.

"From the rules by which surveys are governed we conclude that the true survey begins at poplar on pond running strictly by courses and distances called for by notes of lots Nos. 3. and 4 in connection, up branch as indicated by black lines until the survey connects with the Whitted line; thence along the Whitted line to a point due south of stones; thence north to rock P; thence north eighty degrees east twelve chains to rock; thence south eighty and one-half degrees one chain and sixty links to beginning. The poplar, rock F, rock D (B) and stones (A) being on the bearings and distances correct, we think, shows the error of original survey to be on the measurement from poplar up branch to point E, and not on the courses; therefore we conclude that the black is the true and exact line as run by the first surveyor."

Exceptions were made to the report by the plaintiff, and the Clerk rendered the following judgment:

"It is considered and adjudged that the true boundaries of the Norwood tract mentioned in the complaint in this cause are as follows: Beginning at a poplar (P) on Crawford's pond and running as called for in Norwood's deed, south 13 degrees west 4.78 chains, as indicated by black line on map; thence south $1\frac{1}{2}$ degrees west 3.29 chains; thence south 82 degrees west 3 chains; thence $5\frac{3}{4}$ degrees west 2.65 chains; thence 73 degrees west 3.45 chains; thence north 58 degrees west 70 links; thence south $66\frac{1}{2}$ degrees

west 2.50 chains; thence south 48½ degrees west to Alston Whitted's line: thence with his line to pile of stones (A), or if pile of stones is not on Alston Whitted's line then to a point in his line directly south of said pile of stones; thence north to rock B 9.82 chains; thence north 80 degrees east 12 chains to rock F; thence south 80½ degrees east 1.60 chains to the beginning. It is further ordered that George W. Tate, County Surveyor of Orange county, run and mark said boundaries as determined in this judgment and make a report, together with a map of the lines as determined, which said report and map shall be filed with the judgment roll in this cause and entered with this judgment on the special proceedings docket of this Court.

"It is also adjudged that the plaintiff, James Norwood, pay the costs of this proceeding."

Upon the hearing of the appeal from the judgment of the Clerk before his Honor no issue was tendered by either party.

The Court examined the surveyor at request of defendant's counsel relating entirely to an explanation of his plat and the method of surveying. After argument the Court rendered judgment as follows:

"The Court is of the opinion that the controversy between the parties arising upon the pleadings and the report of the surveyor involves only a question of law as to how the boundary in question shall be ascertained. It is admitted on the argument and by the surveyor that stones A and the three several points on the map marked "Rock" and the beginning poplar are well known and undisputed. It appears from the report and the oral examination and explanation of his survey of the surveyor, Tate, had at instance of defendant's counsel, that the direct courses of the deed, if run, would strike none of these points. The

Court is of opinion that the location of the line can be secured with more certainty by beginning at the poplar, the admitted beginning, and reversing the calls of said deed and running all of said line in accordance therewith by the reverse course until point C on the map reported by the surveyor is reached on red line, and thence a direct course to the known beginning, the poplar. No report is made as to finding the branch referred to in first call in the deed, and the surveyor appears not to have been able to locate it. It is ordered that the judgment of the Clerk confirming the report of the surveyor be reversed; and it is further ordered that the boundaries of lots 3 and 4 be run as follows: Begin at poplar on the dam and running north 80½ west 1.60 chains to rock; then south 80 degrees west 12 chains to rock; then south 9.82 chains to pile of stones; then with Alston Whitted's line south 61½ east 3.50 chains; then north 48½ east 79 links; then north 66½ east 2.50 chains; then south 58 east 70 links; then ____ 73 east 3.45 chains; then north 5¾ east 2.65 chains; then north 82 east 3 chains; then north 1½ east 3.29; thence direct line to the beginning at said poplar on dam.

"The courses in the first call of the deed should be disregarded, as a natural object is called for. The surveyor, G. W. Tate, will run and mark the lines as herein directed and fix a stone at letter C. It is ordered that the costs of the cause be taxed against the defendant, except one-half surveyor's fees and expenses, which shall be taxed against plaintiff."

The appellant, Samuel Crawford, excepted to the rulings of his Honor and appealed, assigning as error:

"1. The Court erred in holding that the line should be run by a reverse survey from the calls as set out in the complaint and admitted in the answer, and insisted that the surveyor should be directed to run and mark the

dividing line between the plaintiff and the defendant, beginning at the poplar and then running the line according to the calls claimed by the plaintiff in his complaint and admitted in the answer.

"2. That the Court erred in attempting to find as facts matters not put in issue by the pleadings, for if there were matters of fact to be tried they were properly to be tried by a jury, which was demanded by the appellant and refused by his Honor, the Court holding that only a question of law was presented by the record, and proceeded to examine the surveyor and finds that certain points, to-wit, stones A and three several points were well known and undisputed, etc., when the pleadings show that the defendant only claims the lands from the poplar to the end of the second call in plaintiff's complaint, and could not, therefore, know of any of the objects located by the Court or the other lines as set out in the judgment and findings of the Court."

*Mr. J. W. Graham*, for plaintiff.
*Messrs. J. A. Long* and *C. D. Turner*, for defendant (appellant).

AVERY, J.: PEARSON, Chief Justice, referring to the case of *Harry* v. *Graham*, 1 Dev. & Bat., 77, said, in delivering the opinion in *Safret* v. *Hartman*, 7 Jones, 203: "It is decided in that case that a posterior line could not be reversed in order by its intersection with the prior line to show the corners unless such posterior line was certain, because to do so would be to extend the distance of the prior by the course of the posterior line. The chance of mistake resting on the one or the other being equal, it was deemed proper to follow the order in which the survey was made." If the measurements of lines in all original surveys had been accurate instead, as we continually observe,

of falling far short of monuments reared as corners, and if all surveys were laid off in squares or equilateral triangles it might make no material difference whether surveyors should run backward or forward from any admitted corner in order to locate the boundary lines. But where by running with the calls a different result from that attained by reversing is necessarily reached or may ensue the safer and more certain method of following the order of the original survey by the interested parties who directed it is, as a rule, adopted. *Harry* v. *Graham, supra.* We find no case in our Reports where this Court has given its sanction to the correctness of a survey made by reversing the lines from a known beginning corner. The rule is to run with the calls in regular order from a known beginning and to resort to the test of reversing in the subsequent progress around the boundary only where the terminus of a call cannot be ascertained by running forward, but can be fixed with absolute certainty by running reversely the next succeeding line.

Leaving out of view the other exception and conceding for the sake of the argument that the defendant waived the right of "trial by jury" upon any issues "raised before" the Clerk, to which the statute (ch. 22, Laws 1893) provided that he should be entitled on the hearing "*de novo*" in the Superior Court, we propose first to discuss the sufficiency of the reason given by the Court for directing that the survey should be made, contrary to the general rule, by reversing the lines from an established beginning corner. It was admitted that the poplar, the beginning, was at a known location. "Course and distance from a given point is a certain description in itself, and therefore is never departed from unless there be something else which proves that the course and distance stated in the deed was thus stated by mistake. * * * So with reversing the line. The party

cannot have recourse to that method of ascertaining a pre-
vious line in the order of description unless by reversing
he gives a more certain means of identifying the prior line
than the deed gives in its description of that line itself.
The natural order of survey is that which the deed shows
the parties to the deed adopted to identify, to their own sat-
isfaction, the land intended to be conveyed by the one to
the other.   It may be considered as their direction how the
identity shall be established by survey at any future time
and it supposes certain points as the beginning to be estab-
lished." *Harry* v. *Graham, supra*, pp. 78, 79.   In our case
it seems that running from a known poplar as a beginning
and following the calls of the deed, no established corner
would be found at the end of the distance for a number of
successive calls, except that the Court finds that there was a
natural object called for at C, but it does not appear that
the description of course and distance, according to the
report of the survey referred to by the Court, was wanting
in any one of such calls, and there is no evidence in these
unfailing directions for reaching a succeeding station of
mistake, whether C was or was not the terminus of the first
call.   The learned Judge who heard the case below seems
to have rested his opinion upon the fact that the beginning
at P and the three last corners, F, B and A, located respect-
ively at rocks and a pile of stones, were admitted to be at
the points indicated on the map, and that in running by
course and distance the calls of the deed in regular order
and without variation that for the stones would pass south
of the true station (at A) to the hand marked M, and thence
to D instead of B.   It is manifest that the Court acted
upon an erroneous view of the rules of surveying estab-
lished in the two leading cases which we have cited and in
many others.   The beginning being fixed, the true rule was
to run the calls when course and distance were given and

locate the corners accordingly, unless testimony was offered to identify some corner called for and locate it at a longer or shorter distance from the point of departure. *Redmond* v. *Stepp*, 100 N. C., 212. When the station next preceding the stones (at A) was reached by actual measurement, the next corner (at A) being identified, the succeeding line should have been run to the known point (at A), disregarding course and distance, because a corner ascertained by usual marks or located by agreement of the parties (as the stones were) becomes in contemplation of law "a fact incorporated into the deed so as to make it a part of the description" (*Safret* v. *Hartman, supra*, p. 204) and is thereby made more certain than the actual measurement on the line called for. The invariable rule seems to require that the lines shall be run from a known beginning according to direction and distance if given in the order in which the parties originally ran and arranged them, but if a call is reached in the regular order which either by a failure to specify distance or by fixing the corner on a line of another tract makes its terminus uncertain and by reversing the next succeeding call from a known point the location of the line or point called for can be made certain, then that mode of surveying becomes proper only because it plainly tends to the attainment of the leading object in making all surveys—certainty of location. If, for instance, the first call in the deed by which the surveyor ran had been for a point in the line of another tract, and thence with such line a given distance to a third corner, which was admitted to be at a certain point on said line, it would have been proper to reverse the call from the third corner so as to ascertain the point at which a prolongation of the first line would intersect with that of the adjacent tract. The same course would be pursued, and for a similar reason, where in the case supposed course but not distance was given in the first

call and the line of the adjacent tract was known to be
marked from the third corner to a point at which running
by course the first line would intersect with it. *Harry* v.
*Graham, supra; West* v. *Shaw,* 67 N. C., 439. If, however,
the location of the beginning point itself had been left in
doubt and could be fixed as a mathematical certainty by
the description that it was at a certain distance and a cer-
tain course from a point, ultimately called for as the corner,
immediately preceding the beginning in returning to the
latter, the line would be run from such last corner in order
to determine where the beginning was located. *Cowles* v.
*Reavis,* 109 N. C., 417.

It is stated as a fact in the judgment of the Court that
the surveyor appeared not to have been able to find "the
branch referred to in the first call." In his report the
surveyor describes the line, recommended by him, as run-
ning up a branch, both in the first and third paragraphs
of it. But however that may be, the Court relieves us of
the trouble of discussing the bearing of this discrepancy
on the case, when it is stated as a conclusion of law based
upon an assumed fact (the admitted location of a corner
at C) that course and distance should be disregarded in
running the first line because a natural object is called for
at C. If that be true, then manifestly the first call should
have been run to such known point, and the succeeding
lines according to course and distance, until a known or
admitted corner should be called for, as at A. *Cowles* v.
*Reeves, supra; Buckner* v. *Anderson,* 111 N. C., 572. Accept-
ing as true the facts stated by the Court, as leading to the
opinion that greater certainty would be attained by revers-
ing the lines, we conclude, therefore, that there was error
in the judgment of the Court even if we concede that the
right of trial by jury had been waived by the defendant,
since upon the admitted facts stated by the Court the lines

should have been run from the known beginning by course and distance, if no more certain evidence of location was shown, and in regular order. The reasons given by the Court were not sufficient to justify a departure from the general rule.

For the reasons given a new trial must be awarded to the defendant, and it is unnecessary to pass upon the question whether the defendant waived his right of trial by jury. It may not be amiss, however, as this is the first appeal involving the construction of the late statute (Acts of 1893, ch. 22), the object of which is manifestly to make processioning of land at last the means of adjusting controversies as to boundaries, to volunteer a suggestion as to the duties of surveyors appointed by the Clerks under the act. It was not contemplated that the surveyor should be treated in any sense as a referee, or should in his report give the Court the benefit of his conclusions of law. He is required to survey the lines according to the contention of each of the parties and to make a map in which shall be designated, by lines and letters or figures, the boundaries as claimed by each. His report should show by what deed or deeds he surveyed, at the request of either, and the successive calls surveyed, with detailed accounts of the measurement by course and distance, also of the marked trees or corners claimed as such, and what was the nature and appearance of the marks, whether course and distance were disregarded in running any given line, whether any steps were taken to ascertain the age of the marks on line trees and corners, and all other facts developed by such survey as would tend to enlighten a Court or jury in the trial of a controversy as to boundary. We are led to make this suggestion by the fact that the deeds by which the surveyor ran are not mentioned in the record, nor are the descriptions contained in them set forth. We infer what were some of the calls

of the deeds attempted to be located from the meager statement of the controverted points and admissions contained in the judgment and the report of the surveyor, which was referred to by the Court as one of the sources from which the facts on which his judgment is based were ascertained. That report, however, does not go sufficiently into details, and it would have been more satisfactory, if there was no controversy as to facts, had the Court incorporated into the judgment a full statement of every material admission of either of the parties.

New Trial.