### S. W. RAINEY v. R. B. HINES.

*Action to Recover Land—Estoppel in Pais—Representations.*

1.  In order that a representation or statement as to an intended abandonment of an existing right or claim to property, made to influence another, shall become an estoppel, it must appear that the person has acted under such representation to his injury.

2.  Plaintiff and one T agreed to exchange lands. T, without having obtained a deed, sold the land to one B, who gave notes and a mortgage on the land as security. T being indebted to defendant, H, transferred the B notes to H who brought suit against B for foreclosure, obtained judgment and had a commissioner appointed to sell, but before the sale went to the plaintiff, R, who was not a party to the foreclosure suit, and enquired whether he had any claim against the land, and upon his assurance that he had no claim, and upon his advice to "go ahead and sell the land," defendant directed the commissioner to sell, and bought the land, though he knew that both T and B were insolvent, and that T had never had a deed from R. Plaintiff thereupon brought this action to recover possession of the land, and for a sale thereof to reimburse himself for expenditures he had been compelled to make in clearing the title to the land which he had taken in exchange from T; *Held*, that no injury resulted to H from the representation of R, and the latter is not estopped thereby.

CIVIL ACTION, for the recovery of land, tried before *Hoke*, *J.*, and a jury, at January, 1897, Special Term. Under the instructions of his Honor, the jury rendered a verdict for the defendant and plaintiff appealed.

*Messrs. Watson & Buxton*, for plaintiff (appellant).
*Messrs. Jones & Patterson*, for appellee.

MONTGOMERY, J.: The plaintiff, in 1890, being the owner of the tract of land in Forsyth county, which is the subject of this action, entered into an agreement in writing with the defendant, Thomas, to exchange the land for a tract belonging to Thomas in Henry county, Va., the plaintiff

to pay about $2,000 to boot in the exchange, and each party to clear his respective tract of all incumbrances. The plaintiff, after he had paid the amount in difference and had received a deed from Thomas to his tract of land, discovered that there were incumbrances on the Thomas tract conveyed to him for a large amount, and he was compelled to pay them off to make secure the title and hold the land; and he refused to make a deed to Thomas to his original tract of land until Thomas should reimburse him for the sums he had paid out. The plaintiff prayed for possession of the land and that it might be sold under the order of court in order that he might be reimbursed the sum he had been compelled to pay out.

The defendant, Hines, in his answer, sets up title to the land and avers that the defendant, Boles, who is in the actual possession, is his tenant. Hines avers further that Thomas, after he took possession under the exchange agreement between Thomas and Raney, sold the same to Boles and took his note for the purchase money secured by a mortgage on the land; and that, for a debt which Thomas owed to him (Hines), Thomas assigned to him as a collateral security two of these notes. Hines further answers that in an action to foreclose the mortgage of Boles to Thomas (Raney not being a party) a sale of the land was ordered, a commissioner appointed, the property sold and a deed made to Hines, the purchaser, by the commissioner. The jury, in response to one of the issues, found that the plaintiff, Raney, had paid out a large sum to creditors of Thomas on account of valid incumbrances that were on the land in Virginia at the time of the exchange, for which Thomas and the land were liable.

On the trial the defendant, Hines, introduced his deed from the commissioner to the land, and testified himself, as a witness, to matters in *pais* which he contended worked

an estoppel on the plaintiff as to any recovery in this action. He testified that after he had procured, in the action for foreclosure, the order of sale above referred to and had the commissioner appointed to make the sale, knowing that Raney was not a party to the action, he went to Virginia to see him concerning his claims on the land (the subject of this action) growing out of the exchange with Thomas; that, in a conversation with the plaintiff, he asked the plaintiff if Thomas owed him anything on the Germantown farm (the land in controversy), and he answered "No. We have had our settlement and neither owes the other anything. Go along and sell the property under your judgment. You can go ahead, Mr. Hines, and I will not bother you." The plaintiff, Raney, denied having made this statement or any one like it to Hines or any one else.

On this question of estoppel the jury found for the defendant, the issue being in these words: "Is plaintiff estopped by his statement to defendant, Hines, from asserting his claim for incumbrance against said defendant, Hines, and against the land?" The exception of the plaintiff is to the instruction of the court on the issue of estoppel. The instruction is in the following language: "On the 7th issue the defendant insists that if plaintiff has an encumbrance on the land, he cannot maintain it, because by his statement he is estopped from asserting it in court; that he has, by his language and statement, put himself in such a position that he cannot now assert his claims; that before defendant bought, he interviewed plaintiff, who told him that he had no claim; that he had settled with Thomas; to go on and buy the land. Plaintiff denies that he made such statement, and says that he distinctly asserted that he had such claims and would maintain them against the land. Now, when one man intentionally acts or speaks so as to mislead another and induces him to believe a certain

state of facts exists, and the other relying on such statement pays out money and assumes contracts or obligations by reason of them, the party who makes such statements will be required to make his words good. He will not be permitted afterwards to assert the contrary; he is estopped to deny that his statements are true or to assert legal rights inconsistent with them, to the injury of another. If the jury are satisfied that before Hines bought he consulted with plaintiff and plaintiff told him he had no claims on the land, to go on and buy, and defendant, acting on those statements and by reason of them, bought the land and paid for it, the plaintiff cannot now assert such claims; he is estopped and the answer to the 7th issue should be 'Yes.' If the jury are not so satisfied, they should answer the 7th issue 'No.' In this they shall be governed by the greater weight of testimony, not the greater number of witnesses necessarily, but in the judgment of the jury the testimony of defendant must have the greater weight." Then, after summing up the testimony, the Judge added: "If defendant has satisfied you by the greater weight of evidence that these statements were made and that defendant bought and paid for the land, relying on them, the issue should be answer 'Yes,' otherwise it should be answered 'No.' "

The alleged ground of estoppel against the plaintiff falls under the head of representations or statements in relation to an intended abandonment of an existing right or claim in property, made to influence another, and by which that other has been induced to act. Before the plaintiff could have been estopped, it must have been shown that the defendant, Hines, not only acted on the representations which he alleged that the plaintiff had made to him, but that he acted to his *injury* and *damage* if the plaintiff should be allowed to make any statement to the contrary. In judicial proceedings the truth of a transaction must al-

ways be allowed to be told, and the rights of property and
person protected, unless the party who desires to make
the truth known has, by his own conduct, so acted as to
cause another person to act to his injury, thereby making
it equivalent to a fraud in fact or in law, if the person
making the statement should attempt to contradict it or
show to the contrary. The law, as administered in this
State, does not favor estoppels, and as to estoppels by
matter in *pais* it may be said that, unless a person has in-
duced another by representations or declarations to alter
his position injuriously to himself, he will not be estopped
to disclose the true state of facts in reference to the matter
in dispute. The fundamental principle on which the doc-
trine of estoppel rests is an equitable one—a principle which
is intended to suppress fraud and to compel just and fair
dealings between all. On no principle of fair dealing and
equity can it be said that one should be estopped to protect
his rights in a matter because of his statements or conduct
in reference thereto and upon which another has acted,
but without prejudice to his interests. It cannot, with
consistency, be said that a man has taken advantage of his
own wrong where his statements have not damaged or in-
jured another. Bigelow in his Institutes, prefixed to his
work on Estoppel, at page 27, writes: "It (the representa-
tion) must have been acted upon to the damage of the party
acting." The same author, in the same book, at page 644,
elaborating the principle above referred to, says: "It is
not enough that the representation has been barely acted
upon; if still no substantial prejudice would result by ad-
mitting the party who made it to contradict it, he will not
be estopped." The same principle is laid down in Herman
on Estoppel, Section 797, in these words: "There can be
no estoppel in equity, or in any principles of equity, unless
the person who asks relief from the rigor of the law is a

purchaser in the large and liberal sense in which the term includes all who have given value or changed their position for the worse in reliance on the act or declarations of others.'' And the same author, in the same work, at Section 759, says: ''If a man, whatever his real meaning may be, so conducts himself that a reasonable man would take his conduct to mean a certain representation of facts, and that it was a true representation, and that the latter was induced to act upon it, in a particular way, and he with such belief does act in that way to his damage, the first is estopped from denying that the facts were as represented.'' To the like effect are the cases of *East* v. *Dolihite*, 72 N. C., 562; *Adler* v. *Pin*, 80 Ala., 351; 47 Conn., 190; 67 Iowa, 14; 25 Pa. St., 449.

Now, if we apply the principle laid down in the text-books referred to and announced in the above Supreme Court decisions, that is, that an essential element of estoppel is injury, as the legal result of a representation or declaration made by one to the other, to the facts in this case, it will be seen that the defendant Hines has not been injured, nor could he have been injured in acting upon the representations which the jury found that the plaintiff made to him. Hines does not stand in the relation of a stranger to the action which he brought against Thomas and Boles to foreclose the mortgage, who wished to buy the land at the commissioner's sale and to pay cash down for it, who had heard of some claim which the plaintiff in this action set up to the land, and who was desirous to learn the nature of that claim before he should invest his money in the purchase. If such had been the fact, then the statement of the plaintiff would have estopped him to deny or contradict the declaration. But Hines was the plaintiff in that action of foreclosure, was the owner of the notes of Boles, the purchaser, from Thomas, secured by a

mortgage upon the land; he had already brought the suit, procured the order of sale, had had appointed the commissioner to make the sale, and at the last named stage of the action notified the commissioner not to sell the land until he could see Raney. Hines knew when he took the notes of Boles to Thomas and when he went to Virginia to see Raney that Raney had executed no deed to Thomas, and that both Thomas and Boles were insolvent. Hines, knowing the insolvency of Thomas and Boles, sought the condemnation of the land for the payment of the notes and proceeded with the action for that purpose, even to judgment and the appointment of a commissioner of sale, before he ever thought of seeing Raney. It is impossible to believe that Hines would have acted in any other way than he did, whether Raney set up a claim to the land or not. Hines had no possible way to collect the money or any part of it except through a sale of the land — the maker; Boles, and the endorser, Thomas, being insolvent. Hines has given up nothing except a worthless note. By the record he has not advanced one cent in litigation after his conversation with Raney, and his position is absolutely unaltered. He stands just where he did before his conversation with Raney, and, as we have said, it is not enough that Raney's representation has been barely acted upon; if still no substantial prejudice would have resulted by admitting Raney to contradict it, he ought not to be estopped.

For the reasons set out there was error in his Honor's instruction to the jury.

New Trial.

FURCHES, J., dissents.