P. B. CLARK v. LONDON MOORE and FRANK WILKINS.

(Decided February 20, 1900.)

*Ejectment—Sufficiency of Description—Location of Land—Lightwood Stakes Called For—Common Grantor—Estoppel In Pais.*

1. When both parties claim under a common grantor, it is not necessary to go further back than the common source in tracing title—the rule being *"quis prior in tempore, potior in jure,"* provided the elder deed contains apt words of conveyance, with a sufficient description of the land conveyed to admit of its location.

2. Stakes called for in a deed to indicate corners are too lacking in stability and fixedness to serve as monuments for that purpose; neither will the use of *lightwood* stakes answer any better, as they may be as easily moved as any other sort—such defective designation of corners may be aided, where courses are given and permanent monuments are called for, such as a well-known old ditch, a marl pit, the outer entrenchment of an old fort, and old lines, and where the quantity of land conveyed is specifically described, as one acre; all of which may enable a survey to locate the land.

3. A plaintiff is not estopped by matter *in pais* from asserting his title because one of his mesne grantors had seen the defendant surveying this land, and had not made objection, and had not then set up claim of title.

CLARK *v.* MOORE.

CIVIL ACTION for possession of land, tried before *Bowman,
J.*, at February Term, 1899, of the Superior Court of BEAU-
FORT County.

Both parties claimed the land in controversy, which was a
single acre, by mesne conveyances under Harmon Eason, the
common source. The plaintiff's chain of title commenced
with deed from Harmon Eason and wife to Nelson Morris, in
1872; the defendants' claimed through the administrator of
Harmon Eason, under a proceeding to sell land for assets.
The deed from the administrator, J. L. James, to S. Fleming,
was dated in 1880.

The following is the description contained in the deed
under which the plaintiff claims, and which corresponds with
the description set forth in the complaint:

"One acre of land lying and being in the State aforesaid,
for and in consideration of the sum of $35 to us in hand paid
by the aforesaid Nelson Morris for the said acre of land, lying
near the town of Washington, and adjoining Fort Washing-
ton, commencing near a marl pit in the center of a ditch,
known by the name of the Trotter ditch, thence running a
southwest course on the outside entrenchment of Fort Wash-
ington to a lightwood stake in Isaiah Pate's line, thence
along Isaiah Pate's line a southeast course to another light-
wood stake, thence a northeast course to the said Trotter
ditch to a lightwood stake in said ditch, thence up the center
of the said ditch to the beginning, a lightwood stake."

A copy of the map used upon the trial is subjoined, the
one acre in dispute being indicated by the figures A, B, F, C.

The defendant contended that lightwood stakes being mere
imaginary points, the description in plaintiff's deeds was too
indefinite to admit of location, and asked his Honor so to
charge. His Honor declined so to charge, and defendants
excepted.

The evidence was very voluminous, and the exceptions taken by the defendants upon the trial were numerous, but related mainly to the vagueness of the description and uncertainty of location.

It was in evidence, that after the defendant had obtained his deed he had a survey made of the land, and that one of the plaintiff's mesne grantors, Sarah Winfield, was present, and made no objection, and set up no claim of title. The defendants asked his Honor to charge the jury, that if this was so, the plaintiff who claimed under her was estopped from setting up title under her. His Honor declined to so instruct the jury, and defendants excepted.

There was a verdict for plaintiff, and judgment accordingly.

Defendants appealed.

*Mr. W. B. Rodman,* for appellants.
*Mr. Chas. F. Warren,* for appellee.

FURCHES, J.   This is an action for the possession of land, and, while other matters were presented and discussed, the principal questions involved were, whether the description in plaintiff's deed was sufficient to locate or authorize a location of the land in dispute, and whether the land had been located. The record is voluminous and is not printed, and, while it may be plain to those acquainted with it, it has given us much labor to understand it, and we hope we do. And, understanding it as we do, it presents to our minds but two real questions, and upon these we hold with the plaintiff.

Both plaintiff and defendants claim title under Harmon Eason and wife. So it is not necessary to go further back, in tracing title, than to said Eason, the common source.

The plaintiff's chain commences by deed from Eason and

CLARK *v.* MOORE.

CLARK *v.* MOORE.

wife to Nelson Morris in 1872, with mesne conveyances from said Morris to the plaintiff. The defendants' title commences with a proceeding by J. L. James, administrator of Harmon Eason, to sell land for assets to pay debts, and sale and deed thereunder to S. Fleming, dated in January, 1880, and deed from Fleming to the defendant Moore, dated in February, 1894. Both claiming from the common source, and the plaintiff's chain of title starting prior to that of the defendants, the plaintiff has the better title if the description in his deed is sufficient to locate the land intended to be conveyed.

The description contained in the deed is as follows: "Do grant, bargain and sell unto the said Nelson Morris of the county and State aforesaid, *one acre* of land lying and being in the State aforesaid, for and in consideration of the sum of $35 to us in hand paid by the aforesaid Nelson Morris for the said *acre* of land, lying near the town of Washington, and adjoining Fort Washington, commencing near a marl pit in the center of a ditch, known by the name of the Trotter ditch, thence running a southwest course on the outside entrenchment of Fort Washington to a lightwood stake in Isaiah Pate's line, thence along Isaiah Pate's line a southeast course to another lightwood stake, thence a northeast course to the said Trotter ditch to a lightwood stake in said ditch, thence up the center of the said ditch to the beginning, a lightwood stake."

This description, as we think, is susceptible of being located, but is not so, for the reason "lightwood" stakes are called for. The reason why a stake is not allowed to be regarded as a monument of title and boundary, in the calls of a deed for land, is its unfixedness—want of stability. *Reed v. Schenck*, 14 N. C., 65. And a lightwood stake would be as easily moved as any other.

But it commences at a point in the Trotter ditch near a marl pit, thence running a southwest course on the outside entrenchment of Fort Washington. The Trotter ditch is there, and the marl pit is also there. The outer entrenchment of Fort Washington is there. These are what may be regarded in law permanent monuments. And it would then seem that the beginning corner may be established with certainty by running a line along the outer entrenchment of Fort Washington to the Trotter ditch, reversing the first call in the deed, and the point where this line (running the reversed call) cuts the Trotter ditch is the beginning corner. The line from this point, running with the first call of the deed southwest along the outer entrenchment of Fort Washington until it cuts the Pate line, is the second corner; thence with Pate's line southeast, thence northeast to the Trotter ditch, and thence up the Trotter ditch to the bgeinning. It is seen that we have three of the boundary lines fixed by the calls of the deed, and permanent boundaries.

The fourth line is yet to be established; and it seems to us that this may be established with equal certainty. The land sold was *one acre*. This is expressly stated in the deed —that we Eason and wife, "do bargain and sell  *  *  * to the said Nelson Morris  *  *  *  *one acre* of land," and again, "paid by the said Nelson Morris the sum of $35 in consideration of the aforesaid *acre of land.*" Thus, having the beginning corner and the course and distance of the first line, and the courses of all the lines, and the amount of land sold, to-wit, *one acre,* it seems to us that the fourth line, completing the boundary of the lot, can be established with mathematical certainty by running it so as to include one acre of land. And if this is so, the deed is susceptible of being located and fitted to the land intended to be sold, and the plaintiff has the title.    3 Washburn on Real Property, 427.

It was alleged by the defendant that the plaintiff was estopped by matter *in pais* from setting up his title against the defendants, for the reason that one of the mesne grantors of the plaintiff had seen the defendant and Fleming surveying this land, and had not forbade them to do so, and had then not set up any claim of title. But the evidence of the defendants on this point was so far from amounting to an estoppel *in pais* that we do not feel called on to discuss it. Bigelow on Estoppel, 595; *West v. Tilgman,* 31 N. C., 163; *Mason v. Williams,* 66 N. C., 564; *Holmes v. Crowell,* 73 N. C., 613; *Estis v. Jackson,* 111 N. C., 141; *Rainey v. Hines,* 120 N. C., 376.

There is a vast amount of evidence sent up, to which there are numerous exceptions. This evidence was principally as to declarations and evidence tending to establish the "lightwood" stakes. We have examined this testimony and the exceptions, and it seems to us that some of the exceptions were technically well taken, but under the view we have taken of the case, the exceptions that might have been sustained, were to evidence that was immaterial and harmless. The judgment must therefore be

Affirmed.