P. C. GUNTER v. WHITING MANUFACTURING COMPANY.

(Filed 27 May, 1914.)

1. **Deeds and Conveyances — Reverse Calls — Location of Points— Calls in Deed — Acreage — Distance — Variance — Trials—Evidence.**

   Where the disputed title to lands depends upon the location thereof contained in the description of a prior grant, which is represented upon the map filed as a parallelogram with the northern boundary as a river, the first call being definite and fixed, the second call being to a stake upon the river, which by actual survey is found to deflect sharply northward between the first and second calls of the grant, without giving the distance between them, but giving the distance between the other calls to a stake, it is correct that the calls be reversed by the surveyor for the ascertainment of the second call, and then follow course and distance given in grant; and it is held that this manner of ascertaining the boundaries of the land granted is not affected by the number of acres therein specified, or that the distance between the third and the last call does not conform to that given on the map.

2. **Grants—Plats—Variance—Trials—Evidence.**

   A plat of the land attached to the original grant is not conclusive, and cannot control the words of the grant; and in connection with other testimony, it is competent as evidence that the location by an original survey was different from that actually ascertained by running the calls of the grant.

APPEAL by defendant from *Ferguson, J.,* at Fall Term, 1913, of GRAHAM.

This is a civil action in the nature of trespass to determine the title to certain land.

There was a verdict and judgment for the plaintiff. The defendant appealed.

166—11

*Dillard & Hill for plaintiff.*

*Morphew & Phillips, Duff Merrick, Zebulon V. Weaver for defendant.*

In this case there are two plats, one marked "A," and is a copy of the original plat attached to the grant. The other is "Exhibit B," the official survey made in this cause.

(A)

$\mathcal{N}$. 1980

640 Acres

BROWN, J. The only question presented in this case is the proper method of surveying the tract of land claimed by the defendant, embraced in Grant No. 2906, to Pete and Gilbert, dated 3 November, 1860. The plaintiff claims the land in dispute in this action under a junior grant of recent date, towit, Grant No. 17596, dated 22 September, 1910, and the title to the plaintiff under said grant depends on whether or not Grant No. 2906, under which the defendant claims, covers the land in dispute.

Grant No. 2906 calls for a tract of land now situate in Graham County, "containing 640 acres of land on the waters of the Tennessee River, beginning at a spruce pine, the northeast corner of Grant No. 2341, on the bank of the Tennessee River opposite the mouth of Hazel Creek, and runs up the river with its meanders east to a stake on the bank of the river; thence south 226 poles to a stake; thence west 452 poles to a stake; thence north 226 poles to the beginning."

The plat attached to the original grant, and upon which it was issued, is set out as an exhibit, and shows a tract of land containing 640 acres, said plat indicating that from the spruce pine eastward the river ran a direct east course, the second call

and the last call being parallel with each other and of equal length.   The actual survey of the property, however, showed that, running from the beginning corner, the spruce pine, east, about half of the length of the grant, the river turns sharply to the north.

(B)

ABCDA—Location of Grant 2906 by reversing calls.
ADEFA—Location of Grant 2906 claimed by plaintiff.
GHBIJKG—Location of Grant 17569.

The evidence of D. B. Burns, a surveyor, is to the effect that the original surveyor did not actually run the grant on the ground, but only established the one corner at the spruce pine, which was found, and about which there was no dispute; that the first call cannot be run in the order set out in the deed, for the reason that there is no distance given at which to stop on the bank of the river; that the second call, south 226 poles, is for a stake, and not a natural object, and that the same is true of the next call, west 452 poles, which also calls for a stake, and

the next and last call is 226 poles to the beginning, the spruce pine; that there being no other corner fixed, or a natural object, that he had to reverse the calls in order to survey the tract, and that so reversing the calls and running from the spruce pine south 226 poles to a stake, as called for in the grant; then east 452 poles; then north to the bank of the river; then with the river to the beginning, would entirely cover the lands claimed by the plaintiff; that to so run the tract of land would add only about 75 acres to the acreage called for in the grant, and would correspond.with the original grant made by Piercey, the county surveyor, except that the second call would be slightly lengthened because of the turn in the river, of which Piercey evidently did not know. He laid out the tract supposing that the river continued a direct eastward course from the beginning point.

The plaintiff introduced J. H. Crisp as a witness, who also testified that if said calls were so reversed it would cover all the land claimed by the plaintiff. That if a survey should begin at the spruce pine and follow up the meanders of the river to the corner of the map at the point "D," and then run south 226 poles; thence west 452 poles; thence north to the beginning, that it would not cover the lands in dispute, such survey being indicated on the map by the dotted line from E to F. He further testified that he made a survey of Grant No. 2906, starting from the spruce pine, the beginning corner, and ran south in reverse order about 100 poles, and then east 452 poles; then north to the river, establishing the upper corner on the river by this method; but that in making the survey in this manner, he did not go hardly far enough south to have 226 poles on the line running north to the river, and that he drove up a stake at the point from which he turned to the river and went on to the end of 226 poles, and that in order not to cover up the plaintiff's land, it would be necessary to make the western line of Grant No. 2906 about 100 poles instead of 226.

It being evidently impossible to make a survey of the tract from the calls set out in the deed, because of the failure of the first call to give the number of poles, and no natural object being called for, it evidently became necessary to reverse the

calls, and the court charged the jury that in running the tract they should reverse the calls and run south from the spruce pine 226 poles to a stake, thence east 452 poles to a stake, then north to the river, and that this would establish the corner on the river, and that having done so, they would then take up the point so established on the river at the end of the first call and run back south therefrom the distance of 226 poles as called for in the grant, then west 452 poles, then north to the beginning, regardless of the distance, and that, so running said tract, it would not cover the plaintiff's land, and the plaintiff was therefore entitled to recover the lands described in their complaint.

It is not necessary to run the reverse course of the calls of Grant 2906 in order to fix the second corner of the grant, although it can be done in that way. It is patent, as testified to by Surveyor Crisp, that the second corner can be located at exactly the same place by beginning at the admitted beginning, the spruce pine on the bank of the river, and running east 452 poles and thence north to the river. The purpose of running the reverse course was to locate the second corner only, and not to locate the entire grant.

The second corner being located with mathematical precision, the whole grant can be definitely located by following the calls of the grant in their natural order, as was held by the court below.

The fourth corner is a stake, and was not located on the ground by the original surveyor. The defendant contends that the third corner, a stake, should be located by reversing from the beginning corner and running south 226 poles; thence east 452 poles; that the third corner should be located at the point where a line run due south from the second corner intersects with the line run due east from the fourth corner, as established by reversing the calls of the grant.

The decisions of this State are to the effect that the second corner being located, the land must be surveyed by the calls as laid down in the grant, and not by reversing the calls. This question was before the Court in the case of *Harry v. Graham,* 18 N. C., 76. In that case the fourth corner was a marked tree,

and was agreed upon by both parties; but the Court held that the third corner must be fixed, not by reversing from the fourth corner, but by following the calls and distances from the second corner. *Duncan v. Hall,* 117 N. C., 443; *Tucker v. Satterthwaite,* 123 N. C., 511; *Lindsay v. Austin,* 139 N. C., 463; *Land Co. v. Lang,* 146 N. C., 311; *Hanstein v. Ferrall,* 149 N. C., 240.

The subject is discussed in *Norwood v. Crawford,* 114 N. C., 513, and *Harry v. Graham* and *Safret v. Hartman,* cited and commented on.

*Mr. Justice Avery* says: "It is decided in that case that a posterior line could not be reversed in order by its intersection with the prior line to show corners, unless such posterior line was certain, because to do so would be to extend the distance of the prior by the course of the posterior line.

"The chance of mistake resting on the one or the other being equal, it was deemed proper to follow the order in which the survey was made. If the measurements of lines in all original surveys had been accurate, instead, as we continually observe, of falling far short of monuments reared as corners, and if all surveys were laid off in squares or equilateral triangles, it might make no material difference whether surveyors should run backward or forward from any admitted corner in order to locate the boundary lines.

"But where by running with the calls a different result from that attained by reversing is necessarily reached, or may ensue, the safer and more certain method of following the order of the original survey by the interested party who directed it is, as a rule, adopted. *Harry v. Graham, supra.*

*"We find no case in our Reports where this Court has given its sanction to the correctness of a survey made by reversing the lines from a known beginning corner.*

"The rule is to run with the calls in regular order from a known beginning, and to resort to the test of reversing in the subsequent progress around the boundary only where the terminus of a call cannot be ascertained by running forward, but can be fixed with absolute certainty by running reversely the next succeeding line."

We do not think that the area of the grant is of much assistance here. According to Surveyor Crisp, the area of Grant No. 2906, if located according to the contention of the plaintiff, would be 400 to 500 acres instead of 600 acres, as called for in the grant; if located according to the contention of the defendant, it would contain 800 to 1,000 acres.

Surveyor Burns testified that if Grant No. 2906 was located according to the contention of the plaintiff, its area would be about 344 acres, while if located according to the contention of the defendant, it would be 714 acres. This evidence could be of no service in fixing the calls of this grant.

It is true that there is a plat annexed to the original grant, and this is made a part of the grant for the purpose of indicating the shape and location of the boundary; but his plat is not conclusive and cannot of itself control the words of the grant. It is only competent, in connection with other testimony, as evidence of the location by an original survey different from that ascertained by running the calls of the grant. *Higdon v. Rice,* 119 N. C., 624; *Redmond v. Mullenax,* 113 N. C., 506.

The plat attached to Grant 2906 is manifestly incorrect, and it arises from the fact that the surveyor did not run out and survey the land, but merely platted it after establishing the spruce pine as the beginning.

This plat indicates that from the spruce pine eastward the river runs a direct east course, the second call and the last call being parallel with each other and of equal length.

The actual survey of the property, however, showed that running from the beginning corner, the spruce pine, east, about half of the length of the grant, the river turns sharply to the north. This accounts for the error in the original plat, attached to the grant.

We are of opinion that the judgment of the Superior Court is correct.

No error.