### LUCY S. JARVIS v. J. D. SWAIN.

(Filed 21 February, 1917.)

**1. Deeds and Conveyances—Description—Reverse Calls.**

In this action involving title to land, the controversy depended upon the location of certain land described in defendant's deed, involving the location of a call from a stake, the beginning call therein, by reversing the calls, etc., and it is *Held*, that the case was correctly tried in the court below under instructions free from error.

**2. Same—Instructions—Contentions—Expression of Opinion—Courts.**

Where in stating the contention of a party to a controversy involving the title to lands, the court tells the jury that the party contends that the jury should begin at a certain point and reverse the calls, etc., it is not objectionable as an instruction that they must do so.

**3. Deeds and Conveyances — Descriptions — Stake — Uncertain Beginning — Reverse Calls.**

Where in an action involving the title to land it is necessary to locate it within the descriptions contained in a deed, which recites the beginning point as a stake which is unknown or uncertan, and the second corner is known and established, the first line may be reversed in order to find the beginning; and the same rule prevails as to the other corners and lines.

CIVIL ACTION tried before *Whedbee, J.,* and a jury, at October Term, 1916, at BEAUFORT.

This is an action to try the title to a small piece of land claimed under a common source. The plaintiff claims under a deed calling for defendant's line. The defendant claims under one Latham. The description in the deed to Latham is as follows:

"Beginning at a stake ninety-five (95) feet west of H. Ryan's line, and running south twenty (20) west about two hundred thirty (230)

feet to Pantego Creek; thence east twenty (20) south with said creek seventy-five (75) feet to a stake; thence north twenty (20) east about two hundred thirty (230) feet (or so far that a line running west 20 north 75 feet will strike the beginning); thence west twenty (20) north seventy-five (75) feet to the beginning, containing seventeen thousand two hundred fifty (17,250) square feet, more or less.

The court charged the jury that the burden rested on the plaintiff to locate the line of that deed.

His Honor, after reading the Latham deed, further charged the jury, among other things, as follows:

("Now, the plaintiff in this action contends that that stake was an imaginary point; that it is impossible to locate it; that it is no fixed object, or object that anybody could possibly locate, and therefore you ought to go to the next call to ascertain where it is, which is thence south 20 west about 230 feet to Pantego Creek. The plaintiff contends that you should go down to Pantego Creek, and I charge you as a matter of law that the point called for as Pantego Creek is where Pantego Creek was on the 1st day of January, 1899, that is, the date of the deed. He says if you will go to where Pantego Creek was in 1899, it would be about 4 feet south of that stump, and that reversing that call and running it would put you about the line X, and that running back to the Ryan line it would be about 95 feet, and he says that ought to satisfy you; that they have shown you evidence that there was a stump situated there about 4 feet from the edge of the water; that they have shown by the plaintiff's son that he sat on that stump and caught crabs, and that there has been erosions, and that that stump was a natural object, and that you ought to go back there and reverse that call, and that would show you where that line was, and that you ought to find it at the point X and not at the post, and, running that distance, the plaintiff says it will give you 230 feet, or approximately 230 feet, and that you ought to find that to be the place, and that it will also run 200 feet in the deed calling from A back to B, and that you ought, therefore, to locate that line, and that the Latham line is the point X-B.")

To that part of the charge in parentheses the defendant excepted.

"The defendant, on the other hand, contends that you ought not to so find. First, the defendant contends that you ought to find that at the time this land was sold that a stake was actually stuck there and that he ran his entire line, and that within a short time thereafter he actually stuck this post 1 inch inside of the line both ways, upon which he afterwards placed a fence, and that the true line as actually marked out and called for in that deed was from the post to the point Y, and that you ought to find from that evidence that the true location of that line in 1899 and at the date of the deed of 1905 or the deed to Jones,

which was further back than that, was at the point, the post P-Y. The defendant further says that even if you should take the river shore and go back and mark from that, that the river shore was not at that time down at the stump, but at the post, and that soon after he got the land he built the breakwater, and that the true line was at the point marked post, and that if you start at the point marked post and run from that 230 feet back, you will go back to the post up there which he claims is on the line Y, to the post; he contends that you ought to find that he would not have built a breakwater there soon afterwards except within close proximity to the shore to keep his land from washing away, and that you ought to find that the true location of the shore was not down at the stump in 1899, and that you ought to find that the true shore line was at the point marked post just south of the old bulkhead.

("How do you find? You cannot say how it was by answering that no, because the burden is on the plaintiff; the burden is to find the actual line as it was run and marked just at that time, don't make any difference who it helps or who it hurts, the burden being upon the plaintiff, if he has satisfied you where it was, answer it.")

To that part of the charge in parentheses the defendant excepted.

"Wherever you begin or wherever you don't begin, your work is to try to locate the line exactly as it was in that deed as made, that is, what you find the line to be in the deed when made. If that fence was on the line that was in actual contemplation of the parties and recognized as such at the time the deed was made, that is the line."

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*John G. Tooly and Harry McMullan for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. The determination of the controversy between the plaintiff and the defendant depends on the location of the Latham deed, and this has been found by the jury in accordance with the contention of the plaintiff under instructions free from error.

The principal exception relied on is upon the ground that his Honor charged the jury that the proper way to locate the Latham deed was to begin at Pantego Creek and ·reverse the call, but an examination of the record fails to disclose that he so charged.

He did state, as one of the contentions of the plaintiff, that as the beginning of the deed was a stake, it could be located by measuring from the creek, and he followed this with a full statement of the contentions of the defendant.

If, however, he had told the jury that they could begin at the creek, as it was when the deed was made and reverse the line to aid them in locating the beginning corner, it would not have been erroneous.

The rule is, in running the calls of a deed, to begin at the beginning corner if it is known or established, and to follow the calls in their regular order, and it is said in *Harry v. Graham,* 18 N. C., 76, and approved in *Gunter v. Mfg. Co.,* 166 N. C., 166, that there is no case in our reports where the Court has given its sanction to the correctness of a survey made by reversing the lines from a *known* beginning corner; but it is equally well established that if the beginning corner is uncertain and the second corner is known or established, that the first line may be reversed in order to find the beginning; and the same rule prevails as to the other corners and lines. *Dobson v. Finley,* 53 N. C., 495; *Norwood v. Crawford,* 114 N. C., 513; *Clark v. Moore,* 126 N. C., 1; *Hanstein v. Ferrall,* 149 N. C., 240.

In *Dobson v. Finley,* which has been frequently cited and approved, the beginning was at two pines on the south side of a hill, and the second corner was a pine, Thomas Young's corner. The two pines at the beginning had disappeared and the beginning corner could not be found, but the pine at Young's corner was found and established, and the judge of the Superior Court permitted the jury to reverse the first line to find the beginning corner.

This rule was approved by the Supreme Court, the Court saying: "Supposing the pine to be established at the second corner, could the first, a beginning corner, be located by reversing the course and measuring the distance called for, from the pine back—that is, on the reversed course? His Honor ruled that the beginning corner could be fixed in this way. We agree with him. If the second corner is fixed, it is clear, to mathematical certainty, that by reversing the course and measuring the distance you reach the first corner; so there is no question about overruling either course or distance by measuring the line, and the object is to find the corner by observing both course and distance."

This authority is directly in point, except that the facts in this record are more favorable to the contention of the plaintiff than in the *Finley case* because here the beginning corner is at a stake, an imaginary point, while in the *Finley case* it was at two pines.

There is

No error.